398 So.2d 1103 (1981)
Gerald James BORDELON
v.
LOUISIANA DEPARTMENT OF CORRECTIONS, et al.
No. 80-C-2800.
Supreme Court of Louisiana.
May 18, 1981.
Kathleen Stewart Richey, of Richey & Price, Baton Rouge, for plaintiff-relator.
S. Dwayne Broussard, Carmack M. Blackmon, Asst. Atty. Gen., for defendants-respondents.
David R. Poynter, Poynter & Speer, Baton Rouge, Sp. Counsel.
LEMMON, Justice.
We granted certiorari to review a district court's ruling that a commissioner of the Nineteenth Judicial District Court has the authority to conduct a hearing on plaintiff's motion for injunctive relief and to submit proposed findings of fact and recommendations for disposition to the district judge. We now affirm the ruling.
Plaintiff initiated the underlying litigation with a petition that claimed damages from the Department of Corrections because of mistreatment he received while committed to Louisiana Training Institute in East Baton Rouge Parish. The petition included a rule for injunctive relief. The district judge, to whom the case was allotted, scheduled a hearing on the motion for a preliminary injunction and referred the case to a commissioner to conduct the hearing.
*1104 During the hearing plaintiff questioned the commissioner's authority to conduct the hearing and to make proposed factual findings and recommendations. The commissioner halted the hearing and submitted a report to the district judge on the issue of the commissioner's authority, recommending that his authority be confirmed. The district judge ruled that the commissioner could be designated to "hear and make recommendations not only on preliminary injunctions but on `any matter or motion pending before the court' " pursuant to R.S. 13:713. Plaintiff then applied for supervisory writs to the court of appeal, which denied the application on the basis that there was no error in the district judge's reasons and ruling. We granted certiorari. 394 So.2d 1245.
R.S. 13:711, adopted by Act No. 62 of 1979, created the offices of two commissioners of the Nineteenth Judicial District Court. The commissioners may perform duties assigned to them by the district judges which are consistent with the constitution and laws of the state. R.S. 13:713 A. In performing these duties, commissioners have all the powers of a district judge, except adjudicatory powers. R.S. 13:713 B. Moreover, R.S. 13:713 C provides:
"In furtherance of the above, a commissioner may be designated and assigned to hear and determine any pretrial matter pending before the court, except motions for injunctive relief and temporary restraining orders in civil matters and preliminary hearings, motions for discovery, motions to suppress, and motions to quash in criminal matters, or any motion or exception which adjudicates any question of law or fact with regard to that matter. A commissioner may be designated to conduct hearings, including evidentiary hearings, and to submit to the judge of the appropriate division, proposed findings of fact and recommendations for the disposition thereof of any matter or motion pending before the court, or any application for post trial relief made therein. In such cases, the commissioner shall file his proposed findings and recommendations with the court, and a copy shall forthwith be mailed, postage prepaid, to all parties or their counsel of record. Any party, within ten days after transmittal of such copy, may traverse such findings or recommendations in writing in such manner as shall be specified by the rules of the district court. The judge of the appropriate division shall make a de novo determination of any findings or recommendations to which objection is made. The judge may accept, reject, or modify in whole or in part the findings or recommendations made by the commissioner and also may receive further evidence or recommit the matter to the commissioner with instructions."
Thus, a commissioner, pursuant to the second sentence of subsection C, may conduct hearings and submit proposed findings of facts and recommendations for disposition on any matter or motion pending before the court. Additionally, a commissioner, pursuant to the first sentence of subsection C, may conduct hearings and determine any pretrial matter pending before the court with certain enumerated exceptions, one of the exceptions being motions for injunctive relief.
We interpret the two provisions, read together, as authorizing commissioners to conduct hearings on any motions, including motions for injunctive relief, and to submit proposed factual findings and recommendations, while prohibiting commissioners from determining or deciding certain pretrial motions. This interpretation accords with the remainder of the legislative scheme that outlines the role of commissioners. After the findings and recommendations are submitted by the commissioner and the parties are afforded an opportunity to traverse in writing, the district judge makes a de novo determination of any disputed finding or recommendation and accepts, rejects or modifies the commissioner's report in whole or in part. If necessary, the judge can receive further evidence or recommit the matter to the commissioner with instructions. The overall scheme clearly reserves *1105 all adjudicatory power to the district judge, although the commissioner may determine some pretrial motions which are not dispositive of the case.[1]
We therefore conclude that pursuant to R.S. 13:713 C a commissioner may be designated to conduct a hearing on a motion for injunctive relief and to submit to the district judge proposed findings of fact and recommendations for disposition, but may not be designated to decide the motion.
Plaintiff further contends that R.S. 13:713, if interpreted in this manner, unconstitutionally denies his "access to a constitutionally sanctioned court". In this respect plaintiff argues that La.Const. Art. V, § 1 (1974) vests the judicial power in those courts created by the constitution.
Certain judicial power may be delegated without any abdication of the judge's fundamental responsibility for deciding cases. Delegation of power to conduct evidentiary hearings and to prepare proposed findings of fact and recommendations for disposition based on the evidence and the arguments is not inconsistent with the constitution and laws which vest the judicial power in judges of enumerated courts, as long as the judges retain the responsibility for making ultimate decisions in the case. Mathews v. Weber, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976).[2] Under R.S. 13:713, as under the Federal Magistrates Act attacked in the Mathews case, the authority and responsibility to make the final determination remains with the district judge. The fundamental responsibility of the judge to make the final determination, after the commissioner conducts a hearing and submits proposed findings and recommendations, is insured by the requirement of a de novo determination of disputed findings or recommendations. Compare United States v. Raddatz, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).[3]
We conclude that this plaintiff's constitutional due process is adequately protected by the procedure outlined in R.S. 13:713, in which the trial judge makes a de novo determination of disputed findings or recommendations and may accept, reject, or modify those findings or recommendations or require additional evidence. We accordingly reject plaintiff's contentions that his constitutional rights are impaired by the designation of a commissioner to conduct a hearing and to submit proposed findings of fact and recommendations for disposition.
The ruling of the district court is affirmed.
WATSON, J., dissents and assigns reasons.
WATSON, Justice, dissenting.
I dissent from the holding that LSA-R.S. 13:713 does not violate the Louisiana Constitution of 1974.
Article 5, Section 1, Louisiana Constitution of 1974, states:
"The judicial power is vested in a supreme court, courts of appeal, district courts, and other courts authorized by this article."
In a suit against the Department of Corrections, a branch of the state, the district courts have exclusive original jurisdiction under Article 5, Section 16, of the Louisiana Constitution of 1974.
Article 5, Section 22, Louisiana Constitution of 1974, requires that all judges shall be elected except for appointments to fill temporary vacancies in office.
The drafters of Act 62 of 1979 attempted to comply with the constitutional mandates *1106 by providing that commissioners can only determine certain pretrial matters and are otherwise limited to findings of fact and recommendations for disposition. LSA-R.S. 13:713 gives the commissioners all the powers of a district judge except the adjudicatory power. However, "judicial power", the term used in Art. 5, § 1, LSA-Const.1974, supra, has a broader meaning than adjudicatory power. An adjudication is a final decree or judgment. Judicial power, which is often defined in terms of jurisdiction, is the power to hear and determine a particular matter.[1] Thus, judicial power is more than the authority to make a final adjudication; it also encompasses hearing testimony and arguments.
LSA-R.S. 13:713 allows commissioners to hear any matter pending in the Nineteenth Judicial District Court. Hearing evidence and reaching findings of fact is a function of judges and jurors. When jurors perform this function, the presiding judge must agree that their conclusions are supported by the evidence. A similar judicial rein bridles the fact finding powers of administrative tribunals. These tribunals perform a quasi-judicial function with constitutional authorization. See, for example, Art. 12 § 14 and Art. 10 § 8, LSA-Const. of 1974.[2]
The 1974 Constitution provides that the "... magistrate courts existing on the effective date of this constitution are retained." Art. 5 § 15. Thus, the magistrate section of the criminal district court for the Parish of Orleans provided by Act No. 548 of 1974 was retained on December 31, 1974, when the new constitution became effective.[3] However, the commissioners or magistrates of the Nineteenth Judicial District Court do not have this constitutional recognition.
LSA-R.S. 13:713 provides for a "de novo" or second determination of those findings to which objection is made by one of the parties. De novo consideration does not mean that there must be a hearing. The provision that the judge "may receive further evidence" indicates that any evidentiary hearing by the judge is purely discretionary. See United States v. Raddatz, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Apparently, the practice is not to transcribe the commissioner's hearing, the only trial the parties may receive, unless there is to be an appeal. LSA-R.S. 13:713 does not require that the judge even review a recording of the testimony on disputed points. There are no standards for his "de novo" determination. Here, the commissioner's court"[4] interpreted LSA-R.S. 13:713 and that interpretation of the law was adopted by the district court judge. It does not appear from the record what " de *1107 novo" attention was given to the contested ruling.
"[O]ne of the essential elements in the determination of the crucial facts is the weighing and appraising of the testimony." Wingo v. Wedding, 418 U.S. 461 at 474, 94 S.Ct. 2842 at 2846, 41 L.Ed.2d 879, at 884 (1974).[5] The performance of judicial duties cannot be delegated to others. Mount v. State, 45 Ala.App. 244, 228 So.2d 857 (1969).
"The assumption that the ... court can perform its judicial duties through the medium of ... commissioners ... is without foundation.... Independently of any constitutional provision this would be so, because judicial powers cannot be delegated.... Those who are chosen by the people to sit as judges must themselves discharge all the judicial duties of their offices... The people have a right to the judgment of those whom they have made judges, and this right the judges cannot surrender, ... it cannot be delegated by the judges themselves, nor by any one else for them." State v. Noble, 118 Ind. 350, 21 N.E. 244 at 249 (1889).
The commissioners of the Nineteenth Judicial District Court are not called judges but they exercise judicial powers.[6] They hold court, hear evidence and make decisions. Those decisions are subject to review and not necessarily final, but that is true of all court decisions, except those of the United States Supreme Court. Appointment of the commissioners by the district judge subverts the Louisiana Constitutional scheme of elected judges. See Opinion of the Justices, 280 Ala. 653, 197 So.2d 456 (Ala., 1967).
The judicial economy argument advanced by defendants is fallacious. Paramedics and paralegals are economical because less highly trained than their mentors. These parajudges, on the other hand, possess all the qualifications of a judge and should, if needed, be judges. Economizing on the title by calling some judges "commissioners" is not true judicial economy. See the discussion in Holiday v. Johnston, 313 U.S. 342, 61 S.Ct. 1015, 85 L.Ed. 1392 (1941) about the convenience and speedy justice arguments.
Defendants rely in brief on Mathews v. Weber, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976), which considered the Federal Magistrates Act of 1968. Act 62 of 1979 was allegedly modeled on that Act. However, the powers conferred on these commissioners are both broader and less specifically delineated than those possessed by federal magistrates. See the analysis in Wingo v. Wedding, supra. The United States Constitution does not require that judges be elected and does not limit the inferior courts which may be established by Congress. Article III, Section 1, United States Constitution.[7] The legislature, absent constitutional amendment, cannot create permanent appointed judges. Judicial innovations are available to Congress which are not allowed the Louisiana legislature. Moreover, Mathews did not treat the constitutional issue of whether Congress had improperly delegated to magistrates duties reserved to Article III judges. See Footnote 5, 423 U.S. at 269, 96 S.Ct. at 554, 46 L.Ed.2d at 491.
Although one purpose of creating the office of commissioner is alleged to be the hearing of prisoner applications for post-conviction relief, federal magistrates did not have the authority to hear habeas corpus *1108 applications until the Federal Magistrate's Act was amended after the decision in Wingo v. Wedding, supra.
"Magistrates are judicial officers of the Federal district courts." (Emphasis added) Mathews, supra, Footnote 7, 423 U.S. at 272, 96 S.Ct. at 555, 46 L.Ed.2d at 492. Also see the dissent by Chief Justice Burger in Wingo v. Wedding, supra, which discusses the magistrates' status as a "lower tier of judicial officers" 418 U.S. at 475, 94 S.Ct. at 2850, 41 L.Ed.2d at 889.
These commissioners, like federal magistrates, constitute a lower tier of the judiciary serving in a type of limited jurisdiction court. The Louisiana Constitution requires that they be elected. Even so, they would have no jurisdiction in this case. The district courts have exclusive original jurisdiction of suits against the State. Art. 5, § 16, La.Const. of 1974.
LSA-R.S. 13:711 is unconstitutional in that it provides for commissioners who function as appointed judges. LSA-R.S. 13:713 is unconstitutional in that it allows the commissioners of the Nineteenth Judicial District Court to exercise a portion of judicial power which is restricted by the Louisiana Constitution to elected judges of authorized courts and persons temporarily appointed by the Supreme Court to fill vacancies on those courts.
I respectfully dissent.
NOTES
[1] Perhaps there are other pretrial motions which involve such ultimate determinations that a commissioner cannot properly determine them. That issue is not presented in this case.
[2] The Mathews decision considered the Federal Magistrates Act, which is very similar (in all respects essential to this case) to R.S. 13:711-713.
[3] The divided court in the Raddatz case only disagreed on the issue of whether the district judge in the de novo determination must hear witnesses when the dispositive issue in a particular case turns on credibility.
[1] LSA-C.C.P. art. 1 provides:

"Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled."
[2] LSA-Const. of 1974, Art. 12 § 14 provides:

"Rules, regulations, and procedures adopted by all state administrative and quasi-judicial agencies, boards, and commissions shall be published in one or more codes and made available to the public."
LSA-Const. of 1974, Art. 10 § 8 provides:
"(A) Disciplinary Actions. No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing. A classified employee subjected to such disciplinary action shall have the right of appeal to the appropriate commission. The burden of proof on appeal, as to the facts, shall be on the appointing authority.
"(B) Discrimination. No classified employee shall be discriminated against because of his political or religious beliefs, sex or race. A classified employee so discriminated against shall have the right of appeal to the appropriate commission. The burden of proof on appeal, as to the facts, shall be on the employee."
[3] See State v. Turner, 389 So.2d 714 (La., 1980) which held that the magistrate created by LSA-R.S. 13:1346 is a judge. The constitutional issue was apparently not raised in State v. Porter, 344 So.2d 1031 (La., 1977) which upheld the validity of a search warrant signed by a commissioner in the Parish of Orleans. The question of the constitutionality of Act 548 of 1974, which created commissioners in Orleans Parish, was pretermitted in State v. Stripling, 354 So.2d 1297 (La., 1978) which held that they were de facto public officers."
[4] Quoting from the transcript.
[5] Quoting Holiday v. Johnston, 313 U.S. 342, 61 S.Ct. 1015, 85 L.Ed. 1392 (1941).
[6] The Louisiana judicial power is vested in constitutional courts. Similarly, the "... judicial power of the United States may only be exercised by article III courts, ... However, courts appear to recognize three categories of exceptional circumstances in which other constitutional grants of power may authorize performance of judicial functions by tribunals not subject to article III constraints." 88 Harvard Law Review 779 at 781.
[7] Article III, Section 1, United States Constitution:

"The judicial power of the United States shall be vested in one supreme court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office."