520 So.2d 393 (1988)
Honorable Nancy Amato KONRAD, et al.
v.
The JEFFERSON PARISH COUNCIL, et al.
No. 87-CA-2515.
Supreme Court of Louisiana.
February 29, 1988.
Rehearing Denied March 31, 1988.
*394 George M. Papale, Gretna, William F. Wessel, New Orleans, Ross P. LaDart, Joseph J. Tosh, Gretna, Louis G. Gruntz, Jr., Jefferson, Alvin Dupre, Jr., Metairie, for appellants.
George M. Strickler, New Orleans, Roy P. Price, Metairie, for appellees.
LEMMON, Justice.
In this declaratory judgment action, two judges of the Juvenile Court for the Parish of Jefferson challenged an ordinance adopted by the Jefferson Parish Council which created the Department of Juvenile Services. The Council has appealed directly to this court from a judgment of the trial court which declared the ordinance unconstitutional. La. Const. art. V, § 5(A). The issues are whether the inherent powers of *395 the Juvenile Court extend to the providing of juvenile services and whether the ordinance interferes with the Juvenile Court's exercise of its inherent powers.

I
The Juvenile Court for the Parish of Jefferson was created in 1958 by La.R.S. 13:1596. The Court's operation was funded by the Parish, and probation officers hired by the Juvenile Judge were paid from the Court's budget.
In 1964 the voters approved a bond issue for the construction of a juvenile detention center, which was completed in 1971. A millage increase was approved in 1971 for operation of the center. Thereafter, probation officers, detention staff and other employees involved in the care and rehabilitation of juveniles were hired by the Juvenile Judges and were paid from the millage revenues. Most of these employees were placed under civil service.[1]
In 1974 the position of Director of Court Services was created and was funded by a federal grant. Lois Foxall was appointed in 1976 to this position, which was not under civil service. Juvenile services were subsequently expanded to include counseling, medical care and education, first under federal grants and later under a bond and millage election.
A dispute developed, apparently over the manner of operation of the educational aspects of the juvenile services program and over the use of millage revenues for the construction of a juvenile justice center/courthouse facility. The Judges removed Foxall from the Director's position in 1987 and transferred her to a different position.
On March 11, 1987, the Council adopted an ordinance which created the Department of Juvenile Services and the position of Director of Juvenile Services, who was given direct administrative supervision over juvenile services for the parish. The ordinance set forth the qualifications of the Director and provided for appointment by the Parish President with the approval of the Council. The ordinance further provided that the Director shall:
"(1) Manage department operations in juvenile services;
"(2) Provide policy guidance to the president in the area of juvenile services;
"(3) Direct administrative staff assigned to this department;
"(4) Formulate and evaluate operating policies, programs and procedures relating to juvenile services with the advice and consent of the president;
"(5) Prepare reports on departmental operations, evaluating performance against established objectives, and special reports on operating problems or plans as required for review by the president;
"(6) Coordinate budget formulation and management activities in the juvenile services department."
Plaintiffs filed this action contending that the ordinance, without mentioning the Juvenile Court, was designed to seize control of programs and facilities which had been operated by the Court for more than twenty years. Plaintiffs alleged that millage dedicated to "juvenile court services" and previously part of the budget for juvenile court services was assigned to the new Department; that the Parish President appointed Foxall as the Director, with the salary for the position transferred from the Court's budget to the Department's budget; and that all employees of the juvenile detention home, all juvenile probation officers and all employees in the evaluation of, and the providing of services for, juveniles on probation from Juvenile Court were placed under the Department. Plaintiffs argued that the ordinance violated the separation of powers between local government and state courts because the Court's authority to design, modify, implement and control programs for juvenile services was *396 necessary to the Court's exercise of its jurisdiction. Plaintiffs also argued that the ordinance was inconsistent with state statutes governing juvenile courts and diverted property taxes from their dedicated purposes.
The trial judge held the ordinance unconstitutional, ruling that the ordinance was an infringement of constitutional separation of powers. The judge reasoned that the Juvenile Court has the inherent power to do all reasonable things necessary for the exercise of its jurisdiction and that it is essential for the Juvenile Court to control the employees who perform services for juveniles on probation, since juvenile courts are unique in possessing extensive post-adjudication jurisdiction over juveniles. The judge also relied upon La.R.S. 13:1587(A), which provides:
"The judge of the court may employ such stenographic, secretarial, and other personnel deemed necessary to make the functions of the court effective and provide adequate service. This shall include authority to commission probation officers, one of whom may be designated as chief probation officer or director of probation. Such officers shall have the power and authority to make arrests, serve notices, orders, subpoenas, and writs, and to execute all orders and peform any other duties incident to their office. Nothing herein contained shall be construed to relieve the sheriff from the duties as set forth in R.S. 33:1435."
The judge further held that the Juvenile Court has the authority to control the juvenile detention facility pursuant to La.R.S. 13:1578, which provides:
"Provisions shall be made for the temporary detention of children in a detention home, to be conducted as an agency of the court or other appropriate public agency; or the court may arrange for the care of such children temporarily in private homes subject to the supervision of the court, or may arrange with any institution or agency to receive for temporary care children within the jurisdiction of the court."
Hence this appeal.

II
Commendably diligent and innovative efforts led to the establishment of programs providing services for the care, supervision and rehabilitation of juveniles who remained subject to the Juvenile Court's jurisdiction while on probation after adjudication. The accomplishments of these programs are a tribute to the dedication of the Court's judges who planned and obtained funding for the programs and implemented them.
The constitutional issue in this case, however, is whether the Juvenile Court has the sole authority to establish or control such programs to the exclusion of the local governing body. Plaintiffs' principal complaint relates to control of the existing funded programs in that plaintiffs assert the newly created Department has continued programs which plaintiffs believed should have been modified and has refused to establish programs which plaintiffs believed were needed for the changing nature of the problems of the juveniles who came before this Court.[2]
A local governmental subdivision operating under a home rule charter has the power in affairs of local concern as broad as the power of the state, except when the power is limited by the constitution, by law permitted by the constitution, or by its own home rule charter. Francis v. Morial, 455 So.2d 1168 (La.1984).[3] Nothing in the constitution or the home rule charter prohibits the Parish from establishing a Department of Juvenile Services to provide programs for the care, supervision and rehabilitation of juveniles on probation and to operate juvenile detention centers. *397 Nor does any law prohibit such action. La. R.S. 13:1578 authorizes the Juvenile Court to place children in detention homes operated by the Court or by other appropriate agency or to arrange for detention with any institution or agency. Certainly this statute does not give the Court the exclusive right to operate a juvenile detention home as its own agency.[4] Further, La.R.S. 13:1587 authorizes the Court to employ staff personnel and "to commission probation officers", but does not deny the Parish authority to provide services to juveniles and to employ persons to supply the services.
Virtually conceding the absence of express law for their asserted exclusive authority to operate and control the programs and the employees, plaintiffs rely instead on the Court's inherent powers.
La. Const. art. II, §§ 1 and 2 divide governmental power into three separate branches and provide that no one branch shall exercise powers belonging to the others. These sections establish the basis for the recognition of inherent powers in the judicial branch which the legislative and the executive branches cannot abridge.[5] Hargrave, The Judiciary Article of the Louisiana Constitution of 1974, 37 La.L. Rev. 765, 768 (1977); Singer Hunter Levine Seeman & Stuart v. Louisiana State Bar Association, 378 So.2d 423 (La.1979).
Under the doctrine of inherent powers, courts have the power (other than those powers expressly enumerated in the constitution and the statutes) to do all things reasonably necessary for the exercise of their functions as courts.[6] The doctrine is a corollary of the concepts of separation of powers and of judicial independence, in that other branches of government cannot, by denying resources or authority to the court, prevent the courts from carrying out their constitutional responsibilities as an independent branch of government. United States v. Hudson, 11 U.S. (7 Cranch) 32 (1812), 3 L.Ed. 259; McCulloch v. Maryland, 17 U.S. (4 Wheat) 316, 4 L.Ed. 579 (1819). The inherent power of the judiciary is a necessary concomitant to the judicial power, but pertains to the administration of the business of the court.
The doctrine of inherent powers has been utilized to provide the power to punish for contempt, United States v. Hudson, 11 U.S. (7 Cranch) 32 (1812); to adopt rules of practice, State ex rel Ross v. Call, 39 Fla. 504, 22 So. 748 (1897); to regulate lawyer admission to practice and lawyer discipline, In re Florida State Bar Association, 134 Fla. 851, 186 So. 280 (1938); and to require the appropriation or expenditure of funds reasonably necessary for the court's functioning as a court, Lancaster County v. Brinthall, 29 Pa. 38 (1857); Note, Judicial Financial Autonomy and Inherent Power, 57 Cornell L.Rev. 975 (1972). The doctrine exists because it is essential to the survival of the judiciary as an independent branch of government. Commonwealth ex rel Carroll v. Tate, 442 Pa. 45, 274 A.2d 193 (1971), cert. denied, 402 U.S. 974, 91 S.Ct. 1665, 29 L.Ed. 138 (1971).
Because there is some inevitable overlap of the functions, each branch of government must strive to maintain the separation of powers by not encroaching upon the power of the others. Consequently, the inherent powers of the judiciary should be used sparingly and only to the extent necessary to insure judicial independence and integrity. Imbornone v. Early, 401 So.2d 953 (La.1981) (Dennis, J., dissenting on original hearing).
*398 In Louisiana the doctrine has been used to stop traffic around the courthouse in Orleans Parish because the noise interrupted court proceedings, City of New Orleans v. Bell, Sheriff, 14 La.Ann. 214 (1859); to regulate admission to the bar and define the practice of law, Ex parte Steckler, 179 La. 410, 154 So. 41 (1934), and Meunier v. Bernich, 170 So. 567 (La.App.Orl.Cir.1936); to require an attorney to represent an indigent, State v. Campbell, 324 So.2d 395 (La.1975); to establish standards governing the conduct of lawyers and to override statutes which tend to impede or frustrate this authority, Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979) and City of Baton Rouge v. Stauffer Chemical Co., 500 So.2d 397 (La.1987); to order the governing authority to budget reasonable funds for expenses necessarily incurred for the district court's operation as a court, McCain v. Grant Parish Police Jury, 440 So.2d 1369 (La.App. 3rd Cir.1983); and to award a fee for the attorney, appointed by the court to represent an indigent natural parent in an abandonment proceeding, against the state agency which initiated the proceeding, State in the Interest of Johnson, 475 So.2d 340 (La.1985).
At issue in the present case is the extent, and not the existence, of the inherent powers of the Juvenile Court. Narrowing the issue further, we note that the constitutional question does not involve the providing of funds for the operation of the Juvenile Court and its related programs or the providing of employees for performing services to juveniles placed on probation by the Court. The amount of funds and the number of employees are not changed by the ordinance. Rather, the question is one of controladministrative control over the employees performing the juvenile services and policy control over the decision of allotting the collected funds among the various types of services provided to juveniles on probation.
To decide the constitutional questions about the extent of the inherent powers of juvenile courts and the ordinance's infringement on those powers, we first look to the express powers and limitations contained in the Constitution. Juvenile courts and other courts of limited jurisdiction are given less constitutional protection than courts of general jurisdiction. While such courts were retained by La. Const. art. V, § 15, the Legislature is authorized to abolish or merge them. Further, juvenile courts have jurisdiction only as provided by laws adopted by the Legislature. The principal constitutional concern as to juveniles is La. Const. art. V, § 19's requirement of special procedures (not special courts) for juveniles.[7]
Moreover, the Legislature has not enacted any legislation which indicates a state policy for having social services to juveniles on probation controlled by the juvenile court to the exclusion of state agencies which provide similar services to other citizens. Nor has this court adopted any administrative rules which would conflict with the ordinance at issue.
La. Const. art. VI, § 25, urged as controlling by plaintiffs, limits the powers of local government over the judiciary by providing that "courts and their officers may be established or affected only as provided in Article V". This section, however, does not add to or detract from the inquiry whether the ordinance conflicts with the constitutional powers of the Court under Article V or with the Court's inherent powers.
Finally, we recognize that juvenile courts, with extensive post-adjudicative jurisdiction, are designed to be more involved than district courts in the rehabilitation of persons adjudicated as law violators (or found to be in need or care).[8] Thus, the fact that the powers pertaining to the institution of prosecution and the supervision of convicted criminals are granted in district *399 court matters to other officials and state agencies is not determinative of the extent of the inherent powers of juvenile courts. Nevertheless, the emphasis of La. Const. art. V, § 19 on special procedures for juveniles, and not on the court which provides these procedures, undermines any conclusion that the Jefferson Parish Council's control over the programs and the employees engaged in providing care, supervision and rehabilitation to juveniles on probation unconstitutionally infringes on the inherent powers of the Juvenile Court for the Parish of Jefferson.
The Juvenile Court clearly must have some degree of control over the conduct of the public employees who provide services for the care, supervision and rehabilitation of juveniles on probation who remain under the jurisdiction of the Court. These employees, for example, are apparently subject to the subpoena and contempt powers of the court. See In re Rita Harris, 493 So.2d 1199 (La.1986).[9] But while one can perhaps conclude that a probation officer or a social worker assigned to a specific case must comply under penalty of contempt with a direct order of the Juvenile Court regarding progress reports or other information about a juvenile placed with a specific agency for counseling and evaluation, it is quite another thing to conclude that the sole authority to hire and fire the psychologist who conducts the counseling and evaluation (or to hire and fire the Director of Juvenile Services) is necessary to the functioning of the Juvenile Court as a court.[10] Of course, the Juvenile Court can place a juvenile on probation with the Department of Juvenile Services (or with a similar private or public agency) and retain the power to review the placement and to remove the juvenile if the services are not appropriate or adequate. But it is not necessary to its judicial function for the Juvenile Court to have exclusive administrative and policy control over the entity which provides the services.[11]
The Juvenile Court for the Parish of Jefferson commendably took the initiative in establishing post-adjudication services for juveniles, and this was a proper function for the Court to perform. We also recognize that juvenile judges often have problems in getting their dispositions carried out to their satisfaction by persons not under their direct control. However, we cannot conclude that exclusive control over such services is necessary to enable the Juvenile Court to function as a court or to preserve its independence.[12] Thus, there was no valid basis for the trial court to declare the statute unconstitutional, and the judgment declaring unconstitutionality must be reversed.
Plaintiffs also asserted that the Parish applied the ordinance to divert property taxes from their dedicated purpose. Because the ruling of unconstitutionality made it unnecessary for the trial court to reach this issue, we remand the case for a ruling on this matter after additional argument and evidence, if necessary.[13]
Accordingly, the judgment of the trial court declaring the ordinance unconstitutional *400 is reversed. The case is remanded to the trial court for further proceedings.
WATSON, J., dissents and assigns reasons.
WATSON, Justice, dissenting.
The authority to direct and control matters having to do with juvenile offenders such as probation and rehabilitation is within the exclusive authority of the juvenile court. An ordinance, which infringes on that authority, violates the separation of powers doctrine of the Louisiana Constitution and is, therefore, unconstitutional.
I respectfully dissent.

On Application for Rehearing.
PER CURIAM.
On application for rehearing, plaintiffs' sole contention is that the ordinance may be interpreted to deprive the juvenile judges of their statutory power to select and control probation officers.
The only issue before the court on original hearing was the constitutionality of the ordinance. Because the ordinance does not mention probation officers or the selection and control of these officers, the issue raised by the application for rehearing has not been considered by the court.
The application is denied.
WATSON, J., would grant a rehearing but concurs in the per curiam.
NOTES
[1] At the time the ordinance was passed, there were approximately 128 employees under civil service performing juvenile services and paid from the millage revenues. In addition there were about forty secretaries, clerks, law clerks, social workers and hearing officers working in the Court and paid from the Court's budget. The Court's employees were excluded from civil service coverage by La. Const. art. X, § 2(B)(10).
[2] Plaintiffs characterized the Council's use of existing funds to establish and staff the new Department as an application of the ordinance to divert property taxes from their dedicated purposes. The trial court ruled the ordinance unconstitutional without reaching this issue.
[3] La. Const. art. VI, § 25 limits the powers of local government over the judiciary, as discussed hereinafter.
[4] La.R.S. 46:1931 authorizes one or more parishes to create a multi-parish juvenile detention home district. Certainly if the Jefferson Parish Council can act in concert with another parish to operate a juvenile detention home, it can do so within its own boundaries for its own citizens.
[5] The independent power of the judiciary in the federal system was recognized in Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). The decision recognized the power of judicial review, although the Constitution did not expressly grant such power to the judiciary.
[6] La.C.J.P. art. 19 recognizes that a juvenile court "possesses inherently all powers necessary for the exercise of its jurisdiction".
[7] The constitutionally mandated special procedures, pertaining to "the determination of guilt or innocence, the detention, and the custody" of juveniles, are applicable even in the sixty parishes in which juvenile matters are handled by courts of general jurisdiction or other limited jurisdiction courts. Of course, these procedures involve the exercise of judicial authority and not executive authority.
[8] For example, a juvenile court may order a juvenile's parents to participate with the juvenile in a suitable counseling program. La.R.S. 13:1583.
[9] This court reversed the criminal contempt conviction in the Harris case because of insufficient evidence in the record on review, and not because the juvenile judge did not have the power to punish for contempt of a direct order.
[10] Similarly, it is one thing for a juvenile court to utilize its inherent powers to require funding for probation officers necessary to the exercise of judicial functions, but it is quite another thing to utilize these powers to defeat the governing authority's attempt to operate a juvenile services program which includes probation officers.
[11] Standards Relating to Court Organization and Administration § 1.2 (1980), prepared by a joint commission of the Institute of Judicial Administration and the American Bar Association, recommends that juvenile intake, probation, and detention services be administered by the executive branch of government. While there is a division of opinion as to this policy decision, the Standards lend support to the conclusion that the exclusive control of these services is not necessary to the Juvenile Court's function.
[12] The fact that no other juvenile court (or district court acting as a juvenile court) in the state deems it necessary to control exclusively any post-adjudication services to juveniles is not determinative, but is persuasive to our conclusion.
[13] The trial court did not rule on plaintiffs' assertion that the ordinance, as applied, constituted an illegal diversion of property taxes from their dedicated purpose. The ordinance did not authorize the Department's use of the millage revenues, and the legality of that use is an issue which is entirely separate from the constitutional issues addressed in this opinion.