866 So.2d 794 (2004)
STATE of Louisiana
v.
Ifiany Obrinna UMEZULIKE.
No. 2003-KA-1404.
Supreme Court of Louisiana.
February 25, 2004.
*795 Charles C. Foti, Jr., Atty. Gen., Michael Harson, Dist. Atty., Janet M. Perrodin, Asst. Dist. Atty., Counsel for Appellant.
*796 Lester J. Gauthier, Jr., Lafayette, Counsel for Appellee.
TRAYLOR, J.
At issue in this matter is whether the last clause of La.Rev.Stat. 13:716(B)(1),[1] which delegates the authority to issue search warrants to the Commissioner of the Fifteenth Judicial District Court, violates the separation of powers doctrine by allowing a non-judicial officer to exercise judicial power which is reserved to elected judges by the Louisiana Constitution of 1974. For the reasons assigned, we reverse the Court of Appeal, Third Circuit, and find that the power to issue a search warrant is not solely a judicial power. Accordingly, we hold that the portion of La. Rev.Stat. 13:716(B)(1) which authorizes the Commissioner of the Fifteenth Judicial District Court to issue search warrants is constitutional and does not violate the separation of powers doctrine.

FACTS AND PROCEDURAL HISTORY
On January 28, 2000, Commissioner Diana Simon of the Fifteenth Judicial District issued a search warrant for the vehicle and home of Ifiany O. Umezulike, the defendant. As a result of the search, officers seized approximately one gram of marijuana and two packs of cigarette rolling paper. Subsequently, on October 5, 2000, a bill of information was signed, charging the defendant with a violation of La.Rev.Stat. 40:966, possession of marijuana, and La.Rev.Stat. 40:1033, possession of drug paraphernalia, both misdemeanors. The defendant filed a motion to suppress the evidence on the basis that La.Rev.Stat. 13:716(B)(1), which allows the commissioner for the Fifteenth Judicial District to sign and authorize search warrants, violates Article V, § 1 of the Louisiana Constitution of 1974.
After a full evidentiary hearing, the trial court denied the defendant's motion to suppress, finding the statute constitutional.[2] In a Per Curiam opinion, the trial judge indicated his main concern was whether the power of a commissioner to sign and issue search warrants, as granted by La.Rev.Stat. 13:716(B)(1), constitutes an "adjudicatory power of the state" as prohibited by this court in State v. O'Reilly, 2000-2864, 2000-2865 (La.5/15/01), 785 So.2d 768. The Court of Appeal, Third Circuit reversed, finding that La.Rev.Stat. 13:716(B)(1) was unconstitutional. 02-1165 (La.App. 3 Cir. 4/9/03), 843 So.2d 614. The State subsequently applied for and was granted writ of certiorari to this court. 03-1404 (La.9/5/03), 852 So.2d 1017.

DISCUSSION
The State maintains that the court of appeal incorrectly concluded that the commissioner's act of issuing a search warrant constituted a "final determination" in violation of the state constitutional provisions which mandate that only an elected *797 judge may exercise judicial power. The State argues that the commissioner's issuance of a search warrant is not an unconstitutional delegation of power because the validity of the warrant may be reviewed in a subsequent motion to suppress. Therefore, the State concludes that the issuance of a search warrant is not a "final determination." In support of this argument, the State propounds Bordelon v. Louisiana Dept. of Corrections and State v. O'Reilly, in which this court addressed the constitutional validity of similar statutory schemes.[3]
Initially, we note that the trial court, the court of appeal, and the State emphasized whether the probable cause determination is an "adjudication" as determined by O'Reilly and Bordelon. While aiding our decision, the O'Reilly and Bordelon classifications are not the sole consideration in this separation of powers case. The specific language of Article 5, § 1 grants "judicial power," not adjudicative power, to the courts of this state. Therefore, the proper inquiry is whether an initial probable cause determination and the issuance of a search warrant is a "judicial power" as intended by the Louisiana Constitution of 1974. Moreover, Article I, § 5 of the Louisiana Constitution specifically addresses the requirements for a search warrant, and as such, an examination of that article is relevant to our determination in this case.
Although the doctrine of separation of powers is clearly and emphatically expressed in the Louisiana Constitution and must be maintained to its full extent, the exact line between judicial and legislative powers has never been delineated with absolute precision. Safety Net for Abused Persons v. Segura, 96-1978 (La.4/08/97), 692 So.2d 1038, 1041. La. Const. art. II, §§ 1 and 2 divide governmental power into three separate branches and provide that no one branch shall exercise powers belonging to another. Distinct from legislative powers, jurisdiction of the courts and the judicial powers flow from constitutional grants. Twiggs v. Journeymen Barbers, Hairdressers, Cosmetologists, and Proprietors Int'l. Union of America, Local 496 A.F.L., 58 So.2d 298 (1952). La. Const. art. 5, § 1 provides: "The judicial power is vested in one supreme court, courts of appeal, district courts, and other courts *798 authorized by this Article." La. Const. art. 5, § 22(A) further provides, in pertinent part: "Except as otherwise provided in this Section, all judges shall be elected." The district courts of this state derive their power from La. Const. art. 5, § 16, which grants to district courts original jurisdiction in all civil and criminal matters except as otherwise provided by law.
Although jurisdiction of a court and judicial powers traditionally flow from constitutional grants, La. Const. art. II, §§ 1 and 2 establish the basis for recognition of inherent powers in the judicial branch which the legislature and executive branches cannot abridge. Segura, 692 So.2d at 1041; Konrad v. Jefferson Parish Council, 520 So.2d 393, 397 (La.1988); Singer Hutner Levine Seeman & Stuart v. Louisiana Bar Assoc., 378 So.2d 423, 426 (La.1979). These inherent judicial powers of the courts are not enumerated in the Louisiana Constitution. Konrad, 520 So.2d at 397; Lee Hargrave, The Judiciary Article of the Louisiana Constitution of 1974, 37, La.L.Rev. 765, 793 (1976). Under the inherent powers doctrine, a court possesses inherently all of the power necessary for the exercise of its jurisdiction even though not granted expressly by law. La. Const. art. 5, § 2; La.Code of Civ. Proc. art. 191; Segura, 692 So.2d at 1041; Konrad, 520 So.2d at 397. Thus, the judicial power of the courts of this state may derive from an express constitutional grant or from inherent judicial power reasonably necessary for the exercise of their function as courts.
As we noted previously, we find that Bordelon and O'Reilly are not dispositive where the Louisiana Constitution specifically addresses the function which may be a "judicial power." Although we stand by our decisions in Bordelon and O'Reilly and adopt the pattern of analysis employed in both cases by examining the essential nature and purpose of the function at issue, we decline to base our decision solely on jurisprudential interpretations of judicial power when Article 5 of the Louisiana Constitution specifically addresses the function at hand. Succession of Lauga, 624 So.2d 1156, 1166 (La.1993). We must, therefore, examine the basic tenets of the right to privacy as protected by the issuance of a search warrant in pari materia with the constitutional grant of judicial power to determine whether the issuance of a search warrant is solely a judicial power.
Louisiana Const. art. 1, § 5 provides for the fundamental right to privacy, stating in pertinent part, "No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search:"[4] Under the familiar principles of Louisiana Constitutional law, the Legislature is entitled to exercise any power not specifically denied by the constitution. American Waste & Pollution Control Co. v. Dept. of Environmental Quality, 580 So.2d 392, 396 (La.App. 1 Cir.1991). Therefore, a party questioning the constitutionality of an act must point to a specific provision of the constitution which clearly *799 prohibits legislative action. American Waste, 580 So.2d at 396; State v. Guidry, 247 La. 631, 173 So.2d 192, 193-194 (1965). When a court can reasonably do so, it must construe a statute so as to preserve its constitutionality. American Waste, 580 So.2d at 396.
Notably, Section 5 does not specifically require that a warrant shall be issued by a judge. Indeed, the drafters of Article I, § 5 were primarily concerned with preventing unreasonable searches and seizures from law enforcement officers, not with the issuing magistrate. Discussion of Section 5 at the Constitutional Convention of 1973 revolved around the importance of maintaining a probable cause determination which is independent of the investigatory powers of the police, rather than the importance of a judicial determination of probable cause. La. Const. Convention of 1973, tr. p. 16, Vol. XIII, 9/1/73 ("What we were concerned about was lawless law enforcement, nothing more, nothing less"). Moreover, Louisiana jurisprudence echoes this constitutional concern through its adoption of the federal `detached and neutral magistrate' standard to protect the function of a search warrant. See, State v. Bastida, 271 So.2d 854, 855 (La.1973)(an evaluation of the constitutionality of a search warrant begins with the rule that the informed and deliberate determination of probable cause is to be made by a neutral and detached magistrate, rather than by police officer.); State v. Horton, 01-2529 (La.6/21/02), 820 So.2d 556, 561. From the drafters' discussion and the jurisprudence, we discern that the function of the initial probable cause determination and the issuance of a search warrant is to temper overzealous police investigation.
Another manifestation of the drafters' intent that the issuance of a search warrant is a quasi-judicial function is the express grant of power to the judiciary in the last clause of Section 5. In pertinent part, this clause states, "Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in court." This provision specifically provides a judicial remedy via a motion to suppress.[5] It is incongruous that the drafters of the 1974 Constitution would specifically grant a court jurisdiction to review a probable cause determination upon a motion to suppress, but merely imply a grant of judicial power with regard to the issuance of a search warrant. In light of the overwhelming concern of overzealous police investigation along with the express grant of power to the judiciary to review an initial probable cause determination, we cannot say that the issuance of a search warrant by a non-judicial officer detracts from the essential function of the search warrant.
In addition to the language of Section 5, federal decisions regarding searches and seizures may also be instructive. Defendant argues that the commissioner's authorization of a search warrant has serious constitutional implications because the delegates to the Louisiana Constitution made a conscious effort to grant even stronger protection of privacy rights than provided by the Fourth Amendment to the United States Constitution. Although we recognize that the Louisiana Constitution *800 of 1974 affords broader privacy rights than the Fourth Amendment of the United States Constitution, this protection has been expanded in order to protect things. Otherwise, it has been recognized by this court that the language of the Fourth Amendment and Section 5 are almost identical.[6]See, State v. Jackson, 00-0015 (La.7/6/00), 764 So.2d 64, 69. Consequently, a review of the federal jurisprudence in the area of privacy rights would be proper.[7] In Shadwick v. City of Tampa, 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972), the United States Supreme Court addressed the issue of arrest warrants of persons charged with breach of municipal ordinances. The Court, addressing the Fourth Amendment, stated:
The substance of the Constitution's warrant requirements does not turn on the labeling of the issuing party. The warrant traditionally has represented an independent assurance that a search and arrest will not proceed without probable cause to believe that a crime has been committed and that the person or place named in the warrant is involved in the crime. Thus, an issuing magistrate must meet two tests. He must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search. This court has long insisted that inferences of probable cause be drawn by `a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'
Id. at 350, 92 S.Ct. 2119 (citation omitted). The Court proceeded to reject "any per se invalidation of a state or local warrant system on the ground that the issuing magistrate is not a lawyer or judge." Id. at 353, 92 S.Ct. 2119. To protect the integrity of the search warrant, the Shadwick court set out a two-part test to insure a non-judicial officer's insulation from the investigatory process: (1) the non-judicial officer must be detached and neutral and (2) he must be capable of determining whether probable cause exists for the requested search warrant. Interestingly, the Fourth Amendment of the United States Constitution and Article I, § 5 of the Louisiana Constitution of 1974 are both silent on the proper issuing party to a search warrant, yet both share the same concerns with regard to the protection of privacy rights from the overzealous nature of the investigatory process. These shared concerns form a basis for patterning our own view in this area after the federal jurisprudence, particularly in light of the fact that our own state constitution does not mandate that a search warrant be issued by a judicial officer. Moreover, in contrast to defendant's argument, the determination by a non-judicial officer does not erode the greater privacy rights afforded by the Louisiana Constitution of *801 1974, so long as the non-judicial officer is sufficiently insulated from the investigatory process.
Moreover, this court must consider the constitutional provisions for the issuance of a search warrant in pari materia with the constitutional grant of judicial power. The Legislature may not take action that will abridge judicial powers or interfere with judicial independence. Konrad, 520 So.2d at 397. Well settled law states that courts possess all powers necessary to exercise the jurisdiction of the court. Id. at 398. At closer inspection, the issuance of a search warrant is not a power necessary to exercise the jurisdiction of the court, nor does it interfere with the independence of the judiciary. In contrast to a procedure necessary to exercise the jurisdiction of the court, the issuance of the search warrant is concerned with investigatory procedure, as evidenced by the primary function of the warrant to protect individual privacy rights from the unfettered investigations of police officers. In issuing the warrant, a non-judicial officer does not detract or interfere with the jurisdiction of the court, but simply provides a check and balance to the investigatory process. The issuance of a search warrant is not a preliminary procedure which requires a judicial determination to protect the independence of the judiciary; it is a protective procedure afforded an individual, insuring his privacy will not be invaded absent a determination by a neutral and detached magistrate. Therefore, we cannot conclude that exclusive control over issuance of search warrants is necessary to enable the Fifteenth Judicial Court to function as a court or to preserve its independence. Thus, the issuance of a search warrant is not an inherent judicial power which a court may exercise exclusively.
Based on Section 5, the federal jurisprudence, and the inherent powers doctrine, we hold that a probable cause determination associated with search warrants is a quasi-judicial function. Although a probable cause determination is clearly a function that may be exercised by the judiciary, it is not a function that lies solely with the judiciary. Ocampo v. United States, 234 U.S. 91, 34 S.Ct. 712, 58 L.Ed. 1231 (1914). The function of a probable cause determination is to protect individual privacy from the unfettered investigations of police officers. State v. Barrilleaux, 620 So.2d 1317, 1322 (La. 1993) (detached and neutral magistrate is safeguard against law enforcement officers' making improper searches under hurried judgment in ferreting out crime). The issuance of a search warrant is designated to prevent the possible abuse of these guaranteed rights by police officers caught up in the heat of investigation. Protection of this guarantee does not require a judicial determination, and can be served by the initial determination of a neutral and detached magistrate or individual.
With regard to the issuance of a warrant, there is no doubt that if a determination of probable cause is to have any meaning, it must be made by a neutral and detached individual who is immune from "the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). The nature and function of the initial determination would be undermined if the issuing person were not insulated from the investigatory process. Traditionally, the federal courts insure independence from the investigatory process through the longstanding and familiar "detached and neutral magistrate" test as set out in Shadwick. Although not set out in either the Fourth Amendment or the 1974 Constitution, the neutral and detached *802 magistrate test is well settled in Louisiana jurisprudence and serves to protect the function and nature of the warrant requirement. Thus, we apply the Shadwick two-part test and find that the privacy rights afforded by Art. I, § 5 are sufficiently protected if the determination is made by a detached and neutral individual and the individual is qualified to exercise the necessary judgment. Shadwick v. City of Tampa, 407 U.S. 345, 350, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972); State v. Bastida, 271 So.2d 854 (La.1973).
Applying the Shadwick test, it is clear that the Commissioner of the Fifteenth Judicial District is detached and neutral. As an official of the Fifteenth Judicial Court, the Commissioner is insulated and disengaged from the activities of a law enforcement officer in the same manner as a judge of the court. The selection of the Commissioner, as authorized by La.Rev. Stat. 13:714(B), is effected by the vote of the majority of the district judges, and the current Commissioner serves "at the pleasure of the court."[8] She is not a law enforcement officer associated with the "competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Thus, there is no question that the branch of government to which a commissioner is responsible is the judiciary.
Moreover, a background in the law is not a requirement imposed by the Constitution on a determination of probable cause. The probable cause determination is, after all, a standard which is designed to be applied by laymen. "It is a practical, non-technical concept, not requiring the complex weighing of factual and legal considerations which is the judge's daily task." State v. Ruotolo, 52 N.J. 508, 247 A.2d 1, 5 (1968). In the instant matter, it appears that the commissioners of the Fifteenth Judicial District Court are trained lawyers, selected by the District Court Judges. Thus, we have no reason to presume that their initial probable cause determination is less likely to protect the privacy rights than those search warrants issued by judges.

CONCLUSION
For the above reasons, we hold that a probable cause determination is a quasi-judicial function. Therefore, the portion of La.Rev.Stat. 13:716(B)(1) which authorizes the Commissioner of the Fifteenth Judicial District Court to issue search warrants is constitutional as it does not delegate a solely "judicial power" to the commissioner. Accordingly, we remand this case back to the trial court to hold a hearing on the merits of defendant's motion to suppress before a duly elected judge.
REVERSED AND REMANDED.
VICTORY, J., concurs in the result.
WEIMER, J., concurs in part, dissents in part, and assigns reasons.
WEIMER, J., concurring in part and dissenting in part.
I concur in the result which upholds the warrant issued in this matter, but I respectfully dissent from that portion of the majority opinion which upholds the constitutionality of LSA-R.S. 13:716(B)(1) in so far as it authorizes the Commissioner of *803 the Fifteenth Judicial District Court to issue search warrants.
Louisiana Constitution art. V, § 1 provides: "The judicial power is vested in a supreme court, courts of appeal, district courts, and other courts authorized by this Article." Louisiana Constitution art. V, § 22(A) provides, in part: "Except as otherwise provided in this Section, all judges shall be elected." Louisiana Constitution art. V, § 16(A) states, in part: "[A] district court shall have original jurisdiction of all civil and criminal matters."
The question to be addressed involves whether the issuance of a search warrant is the exercise of judicial power as that term is used in the provision of the Louisiana Constitution quoted above. According to the Constitution, judicial power is vested in certain courts which are comprised of elected judges. Judicial power is not defined in the Louisiana Constitution. Black's Law Dictionary defines judicial power as follows:
The authority exercised by that department of government which is charged with declaration of what law is and its construction. The authority vested in courts and judges, as distinguished from the executive and legislative power. Courts have general powers to decide and pronounce a judgment and carry it into effect between two persons and parties who bring a case before it for decision; and also such specific powers as contempt powers, power to control admissions and disbarment of attorneys, power to adopt rules of court, etc.
A power involving exercise of judgment and discretion in determination of questions of right in specific cases affecting interests of person or property, as distinguished from ministerial power involving no discretion. Inherent authority not only to hear and determine controversies between adverse parties, but to make binding orders or judgments. Fewel v. Fewel, 23 Cal.2d 431, 144 P.2d 592, 594. Power to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before court for decision. Power that adjudicates upon and protects the rights and interests of persons or property, and to that end declares, construes and applies the law.
BLACK'S LAW DICTIONARY 849 (6th ed.1991).
Judicial power clearly involves exercising that power necessary to resolve disputes, such as interpreting and applying the law and issuing orders and judgments. Judicial power also includes the power to issue a warrant which involves the "exercise of judgment and discretion in determination of questions of right in specific cases affecting interests of person or property." The issuance of a warrant involves "[p]ower that adjudicates upon and protects the rights and interests of persons or property."
There can be no question but that judicial power inherently includes the authority to evaluate the propriety of whether a warrant should issue that will in turn be executed by law enforcement. In Louisiana, judges have historically exercised this authority.[1]
The warrant requirement is constitutionally recognized, existing to protect constitutional rights. See La. Const. art. I, § 5, titled "Right to Privacy."[2] As such, the *804 warrant should only be authorized by constitutionally established judges, who, as required by the Constitution, shall be elected.
In determining whether commissioners were constitutionally authorized to exercise certain powers, this court previously established the line at what were "ultimate decisions" or "the final determination." See Bordelon v. Louisiana Department of Corrections, 398 So.2d 1103 (La.1981). In the case of search warrants, once the search has occurred following the issuance of a warrant, the proverbial bell cannot be unrung; the invasion of one's privacy has occurred; the sanctity of the home has potentially been disrupted. Thus, from the standpoint that a warrant authorizes the search of one's home or other property, it is a final determination. The warrant requirement is designed to prevent the intrusion from occurring in the first place if probable cause is lacking. Although the impact of a search can be lessened based on a motion to suppress, the search, once made, cannot be undone.
In our Constitution, the authority to exercise judicial power lies with those who are elected. Thus, the citizens of Louisiana have retained the authority through the electoral process to determine who exercises judicial power.
The citizens of Louisiana should decide in a constitutional amendment whether they would allow judicial power to be shared with commissioners who are not elected. The authority to exercise judicial power, which includes the authority to issue a warrant, should be constitutionally established and not statutorily ordained.
The statute at issue was no doubt enacted by the legislature at the request of well-intended judges who wanted to better allocate limited judicial resources. Nevertheless, I believe judicial power includes the power to issue a warrant authorizing a search and seizure. The exercise of judicial power is limited to elected judges and cannot be exercised by an appointed commissioner.
Statutes are presumed constitutional. State v. Brenner, 486 So.2d 101, 103 (La. 1986). Although I believe the warrant provision in this statute is unconstitutional, I believe the presumption of constitutionality allows for the application of the de facto officer doctrine. As stated in State v. O'Reilly, 2000-2864, 2000-2865, p. 11 (La.5/15/01), 785 So.2d 768, 776: "This doctrine, grounded in public policy, proclaims that the acts of a de facto officer are valid as to third parties and the public until the officer's title to office is adjudged insufficient." I would thus apply the de facto officer doctrine as was done in O'Reilly and uphold the validity of the issuance of the warrant in this matter.
NOTES
[1] La.Rev.Stat. 13:716(B)(1) states, in pertinent part:

B.(1) The commissioner shall have all powers of a district judge not inconsistent with the constitution and laws of the state of Louisiana and the United States, including but not limited to the power to administer oaths and affirmations, take acknowledgments, affidavits, and depositions, sign orders, act in felony and misdemeanor charges, hear preliminary motions, accepts pleas in misdemeanor cases including misdemeanor cases preliminary to trial on the merits, conduct trials of misdemeanor cases, fix bail, and sign and issue search and arrest warrants upon probable cause being shown and in accordance with Paragraph (2) of this Subsection. (emphasis added)
[2] At the hearing on the motion to suppress, defendant did not attack the probable cause basis for the warrant.
[3] Bordelon v. Louisiana Dept. of Corrections, 398 So.2d 1103 (La.1981), held constitutional La.Rev.Stat. 13:711 (as it existed at the time), which authorized the commissioners of the Nineteenth Judicial District Court to conduct hearings on motion for injunctive relief and submit proposed findings of fact and recommendations to the judge because these determinations did not constitute an "ultimate determination" in the case. Relying on Mathews v. Weber, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976), the Bordelon court reasoned that "judicial power" constitutes the authority and responsibility to make an ultimate determination in a case. According to the court, this ultimate determination is insured by the requirement of a de novo determination of disputed findings or recommendations.

More recently, this court in State v. O'Reilly, 2000-2864 (La.5/15/01), 785 So.2d 768, 774, addressed the limits of judicial power and found that "certain judicial power may be delegated without an abdication of the judge's fundamental responsibility for deciding cases." In O'Reilly, this court declared unconstitutional La.Rev.Stat. 13:719, which authorized the Commissioner of the Twenty-Second Judicial District Court to conduct trials, accept pleas, and impose sentences on misdemeanor cases. Relying on the Bordelon rationale, the court concluded that the portion of the statute which grants the power to make an ultimate determination in a case to a commissioner could not stand because it constituted a "judicial power" as intended by Article V of the Louisiana Constitution. Thus, a commissioner, as an unelected official, could not lawfully exercise the adjudicatory power of the state.
[4] La. Const. art. 1, § 5 provides in full:

Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
[5] "Can we have respect for law enforcement when one of the most sacred Anglo-American concepts is violated without affording the citizen an opportunity for redress. That is the question that is raised by the last sentence ... We have answered it on this committee, by allowing a citizen redress." La. Const. Convention of 1973, tr. p. 22, Vol. XIII, 9/1/73. See also, Lee Hargrave, The Declaration of Rights in the Louisiana Constitution of 1974, 35 La.L.Rev. 1 (1974).
[6] The Fourth Amendment of the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches or seizures, shall not be violated, and no Warrants shall issue, but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
[7] Other jurisdictions also support the notion that a probable cause determination is a quasi-judicial power, or, rather, a power that is not solely judicial in nature. See, State ex. Rel Hill v. Smith, 172 W.Va. 413, 305 S.E.2d 771 (1983); State v. Furmage, 250 N.C. 616, 109 S.E.2d 563 (1959); State v. Ruotolo, 52 N.J. 508, 247 A.2d 1 (1968); Burke v. Superior Court of Arizona, 3 Ariz.App. 576, 416 P.2d 997 (1966). For contrary opinion, See State v. Paulick, 277 Minn. 140, 151 N.W.2d 591, (1967) (statute permitting clerks and deputy clerks of municipal court to issue warrants is unconstitutional).
[8] La.Rev.Stat. 13:714, which creates the office of Commissioner of the Fifteenth District Court states, in pertinent part:

B. The commissioner shall be selected by a majority of the duly elected judges of the district sitting en banc. The commissioner shall serve at the pleasure of the court and may be removed from office by a majority of the elected judges of the district. Additionally, the commissioner shall be subject to removal from office for any reason for which a district judge may be removed.
[1] As noted by the court of appeal, LSA-C.Cr.P. arts. 161 and 162 reference a judge as the official authorized to issue a warrant.
[2] Noteworthy is that Article I, § 5 establishes both the right to privacy and the warrant requirement which protects the right to privacy.