785 So.2d 768 (2001)
STATE of Louisiana
v.
Robert J. O'REILLY.
State of Louisiana,
v.
Scott Brewster.
Nos. 2000-KA-2864, 2000-KA-2865.
Supreme Court of Louisiana.
May 15, 2001.
*770 Richard P. Ieyoub, Atty. Gen., Baton Rouge, Walter P. Reed, Dist. Atty., Covington, Patrick J. Berrigan, Slidell, Dorothy A. Pendergast, Matairie, for Applicants in Nos. 00-KA-2864 and 00-KA-2865.
John A. Hollister, Edward J. LeBlanc, for Respondent in No. 00-KA-2864.
Carol E. Parker, Hammond, for Respondent in No. 00-KA-2865.
KIMBALL, Justice.
At issue in this direct appeal is the constitutionality of that portion of La. R.S. 13:719 which authorizes the commissioner for the Twenty Second Judicial District Court to conduct trials, accept pleas, and impose sentences in misdemeanor cases. Because we find La. R.S. 13:719(E)(2)(e) authorizes the exercise of the adjudicatory power of the state by a non-elected official, we find it violates La. Const. art. V, §§ 1 and 22 and is therefore unconstitutional. However, because the commissioner who sentenced defendants in these consolidated cases was a de facto officer acting under color of right when he presided over defendants' cases, we reverse that portion of the *771 district court's judgment vacating and setting aside O'Reilly's guilty plea and sentence and Brewster's guilty verdict and sentence rendered by the commissioner.

FACTS AND PROCEDURAL HISTORY
On January 6, 1999, defendant Robert J. O'Reilly was charged by bill of information in the Twenty Second Judicial District Court, parish of St. Tammany, with driving while intoxicated (DWI), second offense (DWI 2), in violation of La. R.S. 14:98. The bill indicated that O'Reilly had previously pleaded guilty to DWI in September, 1992. O'Reilly subsequently filed a motion to quash the use of this predicate offense in the instant DWI-2 proceeding. After a hearing before Commissioner James J. Gleason, III, whose office was created by La. R.S. 13:719, defendant's motion to quash was denied. O'Reilly then pleaded guilty to DWI 2, reserving his right to appeal the denial of his motion to quash under State v. Crosby, 338 So.2d 584 (La. 1976). The commissioner accepted O'Reilly's plea and sentenced him to five months in the parish jail, suspended, and placed him on supervised probation for two years with a number of special conditions.
In a separate proceeding, defendant Scott Brewster was charged by bill of information, also in the Twenty-Second Judicial District Court, parish of St. Tammany, with one count of DWI and one count of operating a motor vehicle without a headlight on each side of the vehicle in violation of La. R.S. 32:303. After a trial held before Commissioner Gleason, defendant was found guilty as charged on both counts. The Commissioner deferred the imposition of sentence pursuant to La. C.Cr.P. art. 894 and placed defendant on supervised probation for two years with a number of special conditions.
Defendants O'Reilly and Brewster appealed separately to the district court, which affirmed their convictions and sentences. Defendants then separately applied to the court of appeal for supervisory writs. On its own motion, the court of appeal consolidated the two cases and ordered the parties to brief the issue of the constitutionality of La. R.S. 13:719.[1] The court of appeal subsequently declared La. R.S. 13:719 unconstitutional on the ground that it allows the commissioner to exercise a portion of judicial power restricted by the Louisiana Constitution, Article V, §§ 1 and 22, to elected judges of authorized courts. State v. Brewster, 99-1361, 99-1774 (La.App. 1 Cir. 2/18/00), 764 So.2d 969.
This court granted the State's writ application, and, pretermitting the merits of the case, found that in the absence of the issue being raised by the parties, the court of appeal erred in reaching the constitutionality of La. R.S. 13:719 on its own motion. State v. Brewster, 00-1266 (La.6/30/00), 764 So.2d 945 (per curiam). This court therefore vacated and set aside the judgment of the court of appeal and remanded the case to the district court to allow defendants to specifically plead the unconstitutionality of the statute and to allow the parties to fully litigate that issue.
On August 24, 2000, because of the recusal of the judges of the Twenty-Second judicial district court, this court appointed retired Judge Robert L. Lobrano as judge ad hoc for the purpose of hearing and disposing of the instant matter. Subsequently, *772 on remand, O'Reilly filed an application for post-conviction relief contending that La. R.S. 13:719 is unconstitutional and requesting that his conviction and sentence be set aside. Brewster filed a "Motion to Specifically Plead the Unconstitutionality of LSA R.S. 13:719 As Allowed by the Louisiana Supreme Court," also alleging the unconstitutionality of the statute and requesting that his conviction and sentence be declared null and void. After hearing arguments, the district court noted in its written reasons for judgment that the narrow issue presented is whether the Commissioner's actions in accepting a guilty plea in O'Reilly's case, rendering a guilty verdict after trial in Brewster's case, and imposing sentence in both cases were constitutionally permissible. The trial court found they were not and held that La. R.S. 13:719 is unconstitutional to the extent it authorizes these actions by the Commissioner. Specifically, the district court declined to strike the statute on its face and declared the statute unconstitutional to the extent it authorizes the Commissioner to accept guilty pleas, conduct trials, render verdicts, and impose sentences because these actions are final determinations which dispose of the charges against defendants and therefore must be adjudicated by an elected judge pursuant to La. Const. art. V, § 22.
The State has appealed the district court's judgment directly to this court pursuant to La. Const. art. V, § 5(D).[2]

DISCUSSION
The issue presented in this appeal is whether that portion of La. R.S. 13:719 which allows the commissioner for the Twenty Second Judicial District Court to conduct trials, accept pleas, and impose sentences in misdemeanor cases is unconstitutional.[3]
*773 Enacted by Act No. 141 of the 1st Ex.Sess. of 1998 and effective May 5, 1998, La. R.S. 13:719 created the office of commissioner for the Twenty-Second Judicial District Court. The statute provides that the commissioner "shall be selected" by the judges of the Twenty Second Judicial District and shall serve at the pleasure of that court. Section 719 gives the commissioner jurisdiction over criminal matters and provides that such jurisdiction shall be concurrent with that of the judges of the Twenty Second Judicial District. The statute also provides that the commissioner shall have all of the powers of a judge of a district court that are not inconsistent with the constitution and laws of the state. Additionally, La. R.S. 13:719(E)(2) provides that the powers of the commissioner may include but shall not be limited to the power to:
(a) Administer oaths and affirmations.
(b) Take acknowledgments, affidavits, and depositions.
(c) Act on felony charges through arraignment; however, the commissioner shall not accept pleas of guilty on or sign orders disposing of felony charges.
(d) Hear preliminary motions.
(e) In misdemeanor cases, conduct trials, accept pleas, and impose sentence.
(f) Preside over jury trials in misdemeanor cases.
(g) Fix bail in all matters.
(h) Sign and issue search and arrest warrants in accordance with the general provisions of law, including the requirement of showing probable cause.
(i) Find and punish for contempt of court as a district court judge.
(j) Conduct extradition hearings.
(k) Supervise defendants sentenced under the provisions of the drug court in accordance with the policies set down by the judges of the Twenty-Second Judicial District Court.
In the cases of O'Reilly and Brewster, the commissioner exercised the power granted by La. R.S. 13:719(E)(2)(e) by accepting O'Reilly's guilty plea, finding Brewster guilty after a trial, and imposing sentences in both cases. It is not disputed that the commissioner acted within the scope of the authority granted to him by the statute. Defendants argue, however, that these actions of the commissioner violate La. Const. art. V, §§ 1 and 22. The State contends that the statute is not unconstitutional because the Louisiana Constitution does not expressly prohibit concurrent jurisdiction with district courts on misdemeanor matters and because the Rules of Court for the Twenty Second Judicial District Court provide for a trial de novo by an elected district judge.
Our constitution provides that the judicial power of the state "is vested in a supreme court, courts of appeal, district courts, and other courts authorized by this Article." La. Const. art. V, § 1. Further, the constitution requires that all judges shall be elected except for appointments to fill temporary vacancies in offices. La. Const. art. V, § 22.
In Bordelon v. Louisiana Dep't of Corrections, 398 So.2d 1103 (La.1981), this court held that La. R.S. 13:711 (as it existed at that time), which created the offices of two commissioners of the Nineteenth Judicial District Court, was not unconstitutional *774 since its overall scheme clearly reserved all adjudicatory power to the district judge. The court found that under the version of La. R.S. 13:713(C) in force at the time, the commissioner's authority was limited to conducting hearings on motions and submitting proposed factual findings and recommendations for disposition to the district judge. Further, the court determined that the fundamental responsibility of the district judge to make the final decision, after the commissioner conducted a hearing and submitted proposed findings and recommendations, was insured by statutory provisions requiring the district judge to make a de novo determination of any disputed finding or recommendation. The court concluded:
Certain judicial power may be delegated without any abdication of the judge's fundamental responsibility for deciding cases. Delegation of power to conduct evidentiary hearings and to prepare proposed findings of fact and recommendations for disposition based on the evidence and the arguments is not inconsistent with the constitution and laws which vest the judicial power in judges of enumerated courts, as long as the judges retain the responsibility for making ultimate decisions in the case.

Id. at 1105 (citation omitted) (emphasis added).
Accepting guilty pleas, rendering verdicts after presiding over a trial, and imposing sentences are unquestionably final determinations which involve the exercise of adjudicatory power. In the instant case, the commissioner, pursuant to the authority granted by La. R.S. 13:719(E)(2)(e), exercised adjudicatory power by accepting O'Reilly's guilty plea, finding Brewster guilty after trial, and sentencing defendants. Clearly, this subsection allows the commissioner to exercise a portion of judicial power restricted by La. Const. art. V, §§ 1 and 22 to elected judges of authorized courts. The power to make the ultimate determination in a case must be exercised by duly elected judges. The commissioner, an unelected official, cannot lawfully exercise the adjudicatory power of the state. Subsection (E)(2)(e) of La. R.S. 13:719, which authorizes a nonelected person to exercise adjudicatory power, is therefore unconstitutional.
The State contends that the local rules of the Twenty Second Judicial District Court provide that appeals from the commissioner's decisions shall be filed as a trial de novo to the district judges of that court and that this provision somehow validates any unconstitutional portions of La. R.S. 13:719.[4] We find we need not address the merits of this argument because the record reveals and the district court judge found that defendants were not actually afforded a trial de novo in the district court. On appeal to the district court after the commissioner denied O'Reilly's motion to quash and accepted his guilty plea, the district court affirmed the commissioner's decision, stating that the court reviewed the records and the transcripts filed in this matter "for the errors designated by defense" and concluded that the decision by the commissioner was correct. Similarly, in affirming Brewster's conviction, the district *775 court stated that it reviewed the records and the transcript filed in this matter and concluded that the commissioner's decision in denying the motion to suppress and the verdict of guilty was correct. The following exchange regarding these judgments took place at the hearing conducted on remand from this court:
COURT: There are several questions I would like to ask from a factual standpoint and anyone can stand up and answer them.... One, in O'Reilly, I am reading in the record, that it went to a district judge here. But reading the judgment of the district judge, it appears as though it was not a ... "de novo" hearing. Am I to understand that that's correct? ... It is written, the district judge's opinion is written as though it was a review of what the commissioner did.
O'REILLY'S COUNSEL: That is correct, Your Honor.
* * * *
COURT (To Brewster's counsel): Was there any hearing at all in the Twenty Second on your case before a district judge?
BREWSTER'S COUNSEL: My appeal brief was filed and there was a court date set, but I was told that, you knowit wasn't set asto my knowledge, as a de novo hearing. It was just to review the record and look at my appeal brief....
Thus, the record reveals that defendants did not, in fact, receive a trial de novo. Therefore, we need not determine whether such a trial would cure the constitutional infirmity in the statute.[5]
Finally, the State argues that La. Const. art. V, § 16 gives exclusive original jurisdiction of felony cases to the district courts, but does not prohibit giving concurrent jurisdiction of misdemeanor cases to the commissioner's office created by La. R.S. 13:719. This argument fails when read in conjunction with La. Const. art. V, § 22 which requires that all judges shall be elected. In response to this argument, the district judge correctly held that "there is nothing in Article 5, section 16 which suggests that the legislature can appoint a non-elected judge to perform the adjudicatory functions of those [commissioner] courts."
As mentioned previously, the only declaration of unconstitutionality before us in this direct appeal concerns La. R.S. 13:710(E)(2)(e). We have determined that this subsection is, in fact, unconstitutional. We must therefore determine whether this portion of the statute is severable from the remaining portions of the statute.
The unconstitutionality of one portion of a statute does not render the entire law unenforceable if the remaining portions are severable from the offending portions. State v. Brazley, 00-0923, p. 6 (La.11/28/00), 773 So.2d 718, 722; Pierce v. Lafourche Parish Council, 99-2854, p. 9 (La.5/16/00), 762 So.2d 608, 615; Perschall v. State, 96-0322, p. 28 (La.7/1/97), 697 So.2d 240, 259. The test for severability *776 has been summarized by this court as follows:
The test for severability is whether the unconstitutional portions of the law are so interrelated and connected with the constitutional parts that they cannot be separated without destroying the intention of the legislative body enacting the law. To be capable of separate enforcement, the valid portion of an enactment must be independent of the invalid portion and must form a complete act within itself. The law enforced after separation must be reasonable in light of the act as originally drafted. The test is whether the legislature would have passed the statute had it been presented with the invalid features removed. Where the purpose of the statute is defeated by the invalidity of part of the act, the entire act is void. Conversely, however, when the general objectives of the act can be achieved without the invalid part, the remaining parts of the act will be upheld.
Perschall, 96-0322 at 29, 697 So.2d at 260 (internal citations omitted).
In the instant case, it is clear that the removal of the provision that the commissioner's powers when hearing criminal matters may include the power to conduct trials, accept pleas, and impose sentences in misdemeanor cases will not destroy the legislative intent behind the statute. The legislative history of La. R.S. 13:719 clearly indicates that the legislature intended to reduce the workload of the Twenty Second Judicial District Court by creating the office of the commissioner. The Statute was passed subsequent to a site visit by a team from the Judicial Committee to Evaluate Requests for New Judgeships in which the team recommended the addition of a commissioner for the Twenty Second Judicial District Court after concluding that the judges of that court had a caseload which is far greater than that of the average judge. As such, we find the legislature would have passed the statute without the inclusion of subsection (E)(2)(e) as the remainder of the statute will potentially ease some of the burdens on the judges of the Twenty-Second Judicial District Court. This conclusion is buttressed by that portion of the statute declaring that the powers of the commissioner shall not be inconsistent with the constitution and laws of this state. We therefore find the offending portion of La. R.S. 13:719 can be severed while leaving the remainder of the statute intact and the district court was correct in its conclusion that it was not required to strike the statute in its entirety.[6]
The district court vacated and set aside defendants' convictions and sentences based on the unconstitutionality of La. R.S. 13:719(E)(2)(e). Because of the unusual posture of this case, the district judge did not consider the applicability of the de facto officer doctrine. This doctrine, grounded in public policy, proclaims that the acts of a de facto officer are valid as to third persons and the public until the officer's title to office is adjudged insufficient. Perschall, 96-0322 at p. 30, 697 So.2d at 261. The U.S. Supreme Court has explained the de facto officer doctrine and its underlying principles as follows:

*777 The de facto officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient. The de facto doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office.
Ryder v. United States, 515 U.S. 177, 180, 115 S.Ct. 2031, 2034, 132 L.Ed.2d 136 (1995) (internal citations omitted). Generally, to satisfy the de facto officer doctrine
the officer must be in the unobstructed possession of an office and discharging its duties in full view of the public, in such manner and under such circumstances as not to present the appearance of being an intruder or usurper. A "de facto" official is one who by some color of right is in possession of office and for the time being performs his or her duties with public acquiescence, though having no right in fact; or, as otherwise stated, a person is a "de facto" officer when he or she is in possession of an office and discharges its functions under color of authority. A person is considered a de facto officer where the duties of the office are exercised: without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him or her to be the officer he or she assumed to be; under color of a known and valid appointment or election, but where the officer failed to conform to some precedent, requirement, or condition, such as to take an oath, give a bond, or the like; under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public; or under color of an election or an appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such.
63C Am.Jur.2d § 23 (footnotes omitted). This court has held that until a de facto officer's title to the office is attacked directly and held to be invalid, "the acts of a de facto official are as valid and effectual, when they concern the public or the rights of third parties, as though he were an officer de jure...." State v. Stripling, 354 So.2d 1297, 1300-01 (La.1978).
Additionally, while it is generally true that in order for there to be a de facto officer, there must be a de jure office, an exception exists where an office is provided for by an unconstitutional statute and the incumbent, for the sake of public policy and public justice, will be recognized as an officer de facto until the unconstitutionality of the Act has been judicially determined in a direct proceeding for that purpose. Anderson v. Texas, 149 Tex.Crim. 423, 195 S.W.2d 368 (1946). Stated similarly, the Supreme Court of Minnesota has written:
The rule generally adhered to is that there can be no de facto officer unless there is a de jure office for him to fill. The rule is quite generally limited, or an exception thereto made, to this extent, that where by legislative act or municipal ordinance there is, in form, an office created and an officer elected *778 or appointed to such office, then, although the legislative act or ordinance is unconstitutional or invalid, the officer appointed and acting thereunder is an officer de facto until the act or charter provision is declared by the courts to be unconstitutional or invalid.
State ex rel. Tamminen v. City of Eveleth, 189 Minn. 229, 249 N.W. 184 (1933).
In the instant case, Commissioner Gleason was not a usurper of an office who was acting without color of right. Rather, he was at minimum a de facto officer sitting pursuant to an apparently valid statute whose unconstitutionality had not been attacked directly or declared at the time defendant O'Reilly pleaded guilty and was sentenced and at the time Brewster was tried, found guilty, and sentenced. The district court judgment vacating and setting aside O'Reilly's guilty plea and sentence and Brewster's guilty verdict and sentence must therefore be reversed. Although we recognize that the application of this doctrine to these particular defendants seems harsh, we find that public policy is best served by its application in this case.
We note that defendants have never been afforded a review by the court of appeal of the merits of their respective adjudications below. We therefore remand the case to the court of appeal for it to consider O'Reilly's arguments relating to his guilty plea and sentence and Brewster's arguments relating to his guilty verdict and sentence.

DECREE
For the foregoing reasons, we affirm that portion of the judgment of the lower court declaring La. R.S. 13:719 unconstitutional to the extent that it authorizes the commissioner for the Twenty-Second Judicial District Court to conduct trials, accept pleas, and impose sentences in misdemeanor cases. We reverse that portion of the judgment vacating and setting aside O'Reilly's guilty plea and sentence and Brewster's guilty verdict and sentence. The case is remanded to the court of appeal for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; and REMANDED.
LEMMON, J., dissenting in part.
I dissent from the majority's failure to reverse the convictions of the two defendants.
In City of Baton Rouge v. Cooley, 418 So.2d 1321 (La.1982), the defendant, prior to trial, challenged the legality of a nonelected judge's exercising judicial powers.[1] This court, in a four-to-three decision, allowed a conviction under this unconstitutional procedure to stand, on the basis of the de facto officer doctrine. The Cooley decision, in effect, prevented a citizen accused of a misdemeanor in city court from directly challenging the unconstitutional exercise of judicial power (which could cause the citizen to be imprisoned for several months) and required the citizen to hire a lawyer to bring a civil action challenging the clearly unconstitutional appointment of the presiding judge. See Cooley at 1325 (Lemmon, J., dissenting).
While Cooley involved a challenge to a judge who was illegally exercising the powers of a constitutional office, the present case involves a challenge to an unconstitutionally created office, which is a much more significant situation.
In both Cooley and the present case, the defendant had standing to challenge directly, in the criminal proceeding rather *779 than a separate civil proceeding, the validity of the appointment of the judge who was to decide issues affecting his freedom and his property. In Cooley, the defendant exercised that right to challenge prior to trial, and this court should have declared the invalidity of the appointment. The present case is more difficult because each defendant went to trial without objection and arguably waived the right to challenge. However, this is not a collateral post-conviction attack; the cases are still on direct review, and I would uphold the defendant's right to challenge the appointment.
NOTES
[1] The court of appeal stated that the purpose for consolidating the cases was to consider the constitutionality of La. R.S. 13:719, et seq., and invited the judges and commissioner of the Twenty-Second Judicial District Court to file a statement of their position on this issue, if they so elected.
[2] La. Const. art. V, § 5(D) provides that a case shall be appealable to this court if "a law or ordinance has been declared unconstitutional."
[3] We note at the outset that we would ordinarily inquire into the advisability of deciding this constitutional issue in a case such as this where defendants are questioning the authority of the judge before whom they have been brought on criminal charges. See City of Baton Rouge v. Cooley, 418 So.2d 1321 (La.1982) (refusing to consider a similar constitutional issue and stating that a judge acting under color of right has the authority, capacity, and right to perform judicial duties, that that capacity cannot be challenged collaterally, and that the acts of a de facto judge, even if not de jure, are valid and binding). Due to the unique circumstances present in this case, however, we will forgo this inquiry and move directly into a discussion of the merits of the constitutional issue.

As discussed above, the constitutionality of La. R.S. 13:719 was initially raised not by the parties, but by the court of appeal on its own motion. In vacating the court of appeal's sua sponte declaration of unconstitutionality, this court remanded the case to the district court to allow defendants to specifically plead the statute's unconstitutionality and to fully litigate the issue. This court also dealt administratively with this issue, appointing a judge to replace Commissioner Gleason, at least until these cases and the issue concerning his jurisdictional authority are resolved, and a judge ad hoc for the purpose of hearing and disposing of the instant matter. These unique occurrences, all stemming from the court of appeal's sua sponte ruling on the constitutional issue, combined with the fact that the State has not argued that this court should not reach the merits of the constitutional arguments presented, lead us to proceed directly to the merits of defendants' arguments. The principles espoused in Cooley and the cases cited therein are based on public policy rather than on constitutional or statutory law. We must therefore weigh the public policy supporting the general precept that litigants cannot collaterally challenge the authority of the judge before whom they have been brought on criminal charges against the unfairness that would result from the potential application of this principle to the defendants who find themselves in unique circumstances before this court. Because we find the interests of justice would be best served by addressing the merits of the constitutional issues presented in this case, we will do so without first addressing whether these defendants should be allowed to challenge the authority of Commissioner Gleason in this proceeding.
[4] The statute at issue herein does not provide specifically for a de novo determination, but states in subsection (F):

An appeal may be taken to the district court from any determination made by the commissioner. The judges of the district court shall, by local court rule, establish a procedure for requesting an appeal and setting a time limit within which a party may request such appeal. Any party who is aggrieved by a judgment entered by a commissioner may appeal that judgment in the same manner as any other judgment entered by a district court.
[5] We do note, however, that, for a significant number of defendants, particularly those who enter guilty pleas, there will be no appeals to the district court. In those cases, the conclusive and final adjudication of guilt will have been made by a selected, rather than an elected, judge. Additionally, the Bordelon majority discussed the delegation of certain aspects of judicial power in the context of a statute which did not provide the commissioners with adjudicatory powers. Whether the majority would have reached the same conclusion and found the same degree of reassurance in the power of the district courts to conduct de novo trials or review remains an open question.
[6] Because of the facts presented by this appeal, the district court considered only the constitutionality of that portion of La. R .S. 13:719 which allows the commissioner to conduct trials, accept pleas, and impose sentences in misdemeanor cases. As this was the only portion of the statute declared unconstitutional, the State appealed only this ruling. We therefore do not consider the constitutionality of the remaining portions of the statute.
[1] The Constitution was amended in 1987 to allow appointment of certain non-elected judges in courts of limited jurisdiction. See La. Const. art. V, § 5(A).