Dear Mr. Theriot:
Our office is in receipt of a request from you arising from a recent meeting of the Board of Directors of the Louisiana Citizens Property Insurance Corporation (Citizens). More specifically, your request asks for an opinion as to:
 1) Whether a public body may hold an executive session pursuant to La.R.S. 42:6 for the discussion of a professional services contract, and
 2) Whether a former board member may continue to serve when the issue is not that his term has expired, but rather that he is no longer part of the group qualified by statute to serve on the Board.
Before discussing the application of Louisiana's Open Meetings Law, it is pertinent to consider whether Citizens is even subject to Open Meetings Laws, since the status of Citizens has been debated in the past. Please see Atty. Gen. Op. 07-0245. Citizens is subject to the provisions of Louisiana's Open Meetings Laws, La.R.S. 42:4.1 through 13, as explicitly provided for in La.R.S. 22:1430.2(D)(1), "the corporation shall be subject to R.S. 42:4.1 through 13 and to R.S. 44:1 through 41, and may be considered as if it were a public body for the purpose of those provisions." *Page 2 
bodies and examine public documents, except in cases established by law." The purpose of this law, as defined by the First Circuit in Organizationof United Taxpayers and Civic Associations of Southeast Baton Rouge,Inc. v. Louisiana Housing Finance Agency, 96-2406 (La.App. 1 Cir. 11/07/97); 703 So.2d 107, 110, is "to allow the public to observe and evaluate public officials, public conduct, and public institutions. [Citation omitted]. It is meant to protect citizens from secret decisions made without any opportunity for public input. [Citation omitted]."
Louisiana's Open Meetings Law has been interpreted to protect the right of the public to observe public bodies, as well as to protect citizens' right to voice their opinions on public decisions. This is consistent with the statutory language in La.R.S. 42:4.1 (A), which provides:
 It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy. Toward this end, the provisions of R.S. 42:4.1 through 10 shall be construed liberally.
La.R.S. 42:5(A) provides that, "Every meeting of any public body shall be open to the public unless closed pursuant to R.S. 42:6, R.S. 42:6.1, or R.S. 42:6.2." La.R.S. 42:6 permits executive sessions and outlines the requirements that must be met; La.R.S. 42:6.1 lists the reasons for which an executive session may be held; and La.R.S. 42:6.2 pertains to executive or closed meetings of legislative houses and committees. Additionally, although not applicable to this particular situation, it should be noted that Citizens' right to convene an executive session is more broad than the provisions of La.R.S. 42:6.1, as La.R.S.22:1430.2(D)(2) gives Citizens authority to convene an executive session for issues that would generally fall outside of the provisions of La.R.S. 42:6.1.
To properly follow the procedure for calling an executive session, the public body must meet the requirements set out by La.R.S. 42:6:
 A public body may hold executive sessions upon an affirmative vote, taken at an open meeting for which notice has been given pursuant to R.S. 42:7, of two-thirds of its constituent members present. An executive session shall be limited to matters allowed to be exempted from discussion at open meetings by R.S. 42:6.1; however, no final or binding action shall be taken during an executive session. The vote of each member on the question of holding such an executive session and the reason for holding such an executive session shall be recorded and entered into the minutes of the meeting. Nothing in this Section or R.S. 42:6.1
shall be construed to require that any meeting be closed to the public, nor shall any executive *Page 3 
session be used as a subterfuge to defeat the purposes of R.S. 42:4.1 through R.S. 42:8.
This statute requires that an affirmative vote be taken at an open meeting for which proper notice was provided, where a quorum is present and two-thirds of the voting members agree to hold an executive session. There must be a specific matter that falls within the exceptions listed by La.R.S. 42:6.1, and the vote for each member on the issue of holding an executive session, as well as the reason for doing so, must be recorded and entered into the minutes of the meeting. Under no circumstances does this statute allow for any final or binding action to take place during an executive session.
You specifically asked for our opinion as to whether Citizens could properly go into executive session for the purposes of discussing a professional services contract, and whether this would fall within the parameters of La.R.S. 42:6.1. This exception provides, in part, that:
 A public body may hold an executive session pursuant to R.S. 42:6 for. . .Discussion of the character, professional competence, or physical or mental health of a person, provided that such person is notified in writing at least twenty-four hours before the meeting and that such person may require that such discussion be held at an open meeting, and provided that nothing in this Subsection shall permit an executive session for discussion of the appointment of a person to a public body. . .
[Emphasis added]. La.R.S. 42:6.1(A)(1).
Your opinion request submits this exception should be limited to employees or personnel. The plain language of the statute does not provide this limitation, which suggests that Citizens may properly conduct an executive session, provided they have met the requirements provided in the Open Meetings Law to call and go into an executive session, to discuss the character or professional competence of a person in relation to a professional services contract. This interpretation is supported by and consistent with previous Attorney General opinions.
In Atty. Gen. Op. No. 82-529, our office stated that "a discussion of sensitive personal financial information is certainly a discussion of the character or professional competence of a loan applicant, be it an individual or business, and is thus within the purview of R.S.42:6.1(A)(1)." [Emphasis added]. This opinion applied the provisions of La.R.S. 42:6.1(A)(1) to individuals and businesses that were not employees of the public body, but rather to applicants for loans from a nonprofit corporation.
In Atty. Gen. Op. No. 85-689, our office was asked if it was proper for the Louisiana Board of Certified Social Work Examiners (Board of Social Work) to hold executive sessions to discuss professional competence. Our office opined that it was proper for *Page 4 
the public body to hold an executive session pertaining to the determination of professional competence, provided the person who is the object of the meeting may require that such discussion be held at an open meeting. Atty. Gen. Op. No. 85-689. This opinion did not limit the applicability of La.R.S. 42:6.1 to discussions in executive session pertaining to employees or personnel, and in Atty. Gen. Op. No. 94-561, our office advised that the Board of Social Work could go into executive session for "the limited purpose of discussing the character, professional competence, or physical or mental health of a licensee, pursuant to LSA-R.S. 42:6.1." [Emphasis added].
The applicability of this exception to licensees, persons other than employees or personnel, is also supported by Atty. Gen. Op. No. 77-1, whereby our office advised that La.R.S. 42:6.1 (A)(1) could properly be used to invoke an executive session to discuss the character, professional competence, or physical or mental health of someone who has been refused a license by the Alcohol Beverage Control Board.
Further, in Atty. Gen. Op. No. 91-158A, which discusses the applicability of La.R.S. 42:6.1 (A)(1), our office stated that, "this exception provides for the discussion of a `person', and is not, by its terms, limited to those persons already employed in public service, nor is it exclusive of applicants and prospective employees." Please also note that, pursuant to La.C.C. art. 24, there are two kinds of persons: natural and juridical. This article provides, in pertinent part, "A natural person is a human being. A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership." La.C.C. art. 24.
Article 1, Section 5 of the Louisiana Constitution provides that: "Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy." In addressing the relationship of the constitutional right of privacy to this particular exception in the Open Meetings Law, our office opined that, "the Open Meetings Law exception found in LSA-R.S. 42:6.1(A)(1) was intended to implement, guard and enforce the same privacy rights which are protected by Article 1, Section 5." Atty. Gen. Op. No. 91-158A.
This further supports the proposition that the exception in La.R.S.42:6.1(A)(1) does not apply solely to employees or personnel, but to anyperson whose right to privacy may be affected by a public body's discussion of their character, professional competence or physical or mental health. It is therefore our opinion that a person, including a person contracted by a public body for professional services, has a right to privacy in the discussion of his character, professional competence or physical or mental health. Provided the discussion falls within the limits of La.R.S. 42:6.1 and the individual is given sufficient notice as provided by the statute, a Board may go into executive session to discuss this person, including the performance of any service agreement that person may have with the public body.
Your opinion request also asks what discussion must take place in the open meeting in regard to a professional services contract. Because of the strict interpretation of any *Page 5 
exceptions to the Open Meetings Laws, the discussion that takes place in executive session must be limited to the specific reasons provided for in the statute itself. In this case, only the "character, professional competence, or physical or mental health" may be discussed. La.R.S.42:6.1 (A)(1). Anything that falls outside of these categories in regards to a contract for professional services must be discussed in open meeting. The First Circuit, in Brown v. East Baton Rouge ParishSchool Board, 405 So.2d 1148 (La.App. 1 Cir. 10/12/81), stated that "only `discussion' is allowed by the exception." As La.R.S. 42:6
provides, no final decisions or binding action may be made in executive session, and a public body cannot use executive session as a subterfuge to defeat the purposes of La.R.S. 42:4.1 through La.R.S. 42:8.
Your second question addresses Act 403 of the 2007 Regular Session, which amended particular sections of La.R.S. 22:1430.3, and more specifically, changed the groups from which the Governor makes appointments to the Citizens board. Your letter states that the board members appointed under the old law have continued to serve on the board. We understand that the Governor is now in the process of making appointments to the Citizens Board. You inquire as to whether a former board member may continue to serve when the issue is not that his term has expired, but rather that he is no longer part of a group designated by statute to serve on the board.
According to the information you provided, it appears that the Governor made the following appointments to the Board of Directors of Citizens under La.R.S. 22:1430.3(A), as it existed prior to revisions by Act 403 of the 2007 regular session of the Louisiana Legislature:
 1) One from a list of two nominees from the domestic insurer with the largest direct premium in the State of the subject lines of business (A)(5);
 2) One from a list of two nominees from an insurer with at least one percent of the aggregate statewide written premiums of the subject line of business (A)(5);
 3) Three representatives appointed at-large (A)(5);
 4) One member from a list of three nominees from that National Association of Independent Insurers (A)(8);
 5) One member from a list of three nominees from The Alliance of American Insurers or its successor (A)(10); and
 6) One member from a list of two nominees from the insurer with the largest direct written premium in the State of the subject lines of business (A)(11).
After August 15, 2007, the effective date of Act 403, pursuant to the amendments made in La.R.S. 22:1430.3(A)(5), (8) and (10), the Governor was mandated to appoint the following persons to the board:
 1) One from a list of two nominees from the Louisiana Bankers Association (A)(5); *Page 6 
 2) One from a list of two nominees from the Louisiana Home Builders Association (A)(5);
 3) One from a list of two nominees from the Society of Louisiana Certified Public Accountants (A)(5);
 4) One from a list of two nominees from the Louisiana District Attorney's Association (A)(5);
 5) Two representatives at-large (A)(5);
 6) One from a list of three nominees from the Property Casualty Insurance Association of America or its successor (A)(8);
 7) One from a list of three nominees from the largest property insurer in the state (A)(10).
Under the revisions to the statute, there is no longer a seat on the board for a member from the domestic insurer with the largest direct premium in the State of the subject lines of business; for the member nominated from an insurer with at least one percent of the aggregate statewide written premiums of the subject line of business; for the member nominated from the National Association of Independent Insurers; and the member nominated from the Alliance of American Insurers or its successor. In addition, the new law eliminated one of the at-large positions. You contend that the persons serving in the above referenced eliminated positions are no longer qualified to sit on the board.
It is the opinion of this office that the governing statutory provision is La.R.S. 42:2, which provides that "[e]very public officer in this state except in cases of impeachment or suspension, shall continue to discharge the duties of his office until his successor is inducted into office." Also controlling is Article XIV, Section 15 of the Louisiana Constitution, which provides, in pertinent part, "A person holding an office by appointment shall continue to exercise his powers and duties until his office is abolished, his term ends, or he is removed or replaced under the provisions of this constitution or by law."
In the situation you described, the Louisiana Legislature has changed the qualifications for appointment to the Citizens board. In accordance with La.R.S. 42:2 and La.Const. Art. XIV, § 15, since these members have not yet been removed or replaced, they shall continue to discharge the duties of their office until their successors are inducted into office. They were qualified to serve Citizens according to the effective statute when they were appointed. Although the qualifications have now been amended, such that some of them may no longer be qualified to serve, they shall continue to serve until their successors are appointed.
This interpretation is consistent with previous opinions from the Attorney General's office. Atty. Gen. Op. No. 96-1 addressed issues relating to the enactment of Act 1032 of 1995. This Act changed the composition of the Atchafalaya Basin Levee District by reducing the number of appointed members from the Parish of Terrebonne from three members to one member. In this opinion, our office stated that, under the authority of *Page 7 
La.R.S. 42:2, until the governor appointed the members of the new board, the present members would continue to hold office. Despite the fact that two members from the Parish of Terrebonne would no longer be qualified to serve the District after the effective date of Act 1032, our office was of the opinion that the three members from Terrebonne Parish must continue to serve until the new appointments were made by the governor.
Qualification changes were also addressed in Atty. Gen. Op. No. 75-932, where our office discussed whether a person who does not reside within the boundaries of a levee district may continue to serve on the levee district board, when the constitution has been modified to require members to reside in the district which they serve. Our office stated that the application of that provision is "prospective and prescribes only the selection of board members after a certain date," citing Article XIV, Section 15 of the Louisiana Constitution as authority for this proposition.
In addition to the amendments made to La.R.S. 22:1430.3(A)(5), (8) and (10), La.R.S. 22:1430.3(A)(11) was repealed. There is no longer a provision for a member appointed by the governor from a list of two nominees from the insurer with the largest direct written premium in the State of the subject lines of business. The information provided does not address whether this member has continued to serve on the board. It is our position, as the section of the statute providing for the appointment of this member has been repealed, that this person should not continue to serve. The qualifications for this member's seat have not changed. There is no successor that needs to be appointed.
In conclusion, our office is of the opinion that some members of the Citizens board shall continue to serve, despite the fact that the statute determining their qualifications has been amended, when their successors have not yet been named. When a member has been appointed pursuant to a statutory provision that has been repealed, that member should no longer continue to serve.
As this opinion has indicated, Act 403 of the 2007 regular session of the Louisiana Legislature significantly changed the composition of the Citizens board. Although it may be argued that certain membership of the Citizens board was abolished by such a significant revision, questioning the validity of acts by Citizens by attacking their membership is irrelevant due to the de facto officer doctrine.
When questioning the actions of a public officer, jurisprudence has long recognized that the law does not examine whether that person has a valid right to the office, but rather he is in office "in fact and under color of right, or in other words whether he is an officer de facto."State ex rel. Floyd v. Hodges, 165 La. 552, 556, 115 So. 747. This principle grants validity to acts done by persons acting under the color of official title, even if it is later discovered that the legality of the person's appointment may be deficient. State v. O'Reilly, 2000-2864 (La. 5/15/01), 2000-2865 (La. 5/15/01); 785 So.2d 768, 776. As the Louisiana Supreme Court has described it, "[t]his doctrine, grounded in public policy, proclaims that the acts of a de facto officer are valid as to third persons and the public until the officer's title to office is adjudged insufficient. [Citation omitted]." Id. See also *Page 8 Williams v. Police Jury, 160 La. 325, 107 So. 126; State v. Moreau,153 La. 671, 96 So. 527; and Michell v. La. State Board of OptometryExaminers, 146 So.2d 863 (La.App. 3 Cir. 1962), affirmed, 156 So.2d 457
(La. 1963).
The Louisiana Supreme Court has recognized the significance of the de facto officer doctrine as early as 1928, stating "[i]f one in possession of office, under color of title, could not be required, during his incumbency, to discharge the duties of the office, the public might suffer until his title to it could be ascertained in a proper proceeding." Floyd at 556. In a Third Circuit Court of Appeals case, where petitioner contested a regulation promulgated by the Board of Optometry Examiners by arguing the method of appointment to the Board was unconstitutional, the Court did not reach the issue of constitutionality of appointment due to the applicability of the de facto officer doctrine, finding that "even if the board was not legally constituted, its acts must be given effect." Michel at 868.
It is of importance to note that this opinion is only addressing whether it was appropriate, under the specific instance described in the opinion request, for the Board to enter into executive session, and whether the members who were qualified under the old statute should continue to serve. This opinion is not in any way addressing the substantive appropriateness of any decisions made by the Citizens board. We are not opining as to the propriety of actions taken by the Board, whether such actions taken are proper under civil or criminal law, or whether such actions are in compliance with the Code of Governmental Ethics.
We hope that this opinion has adequately addressed the legal issues that you have raised. If our office can be of any further assistance, please do not hesitate to contact us.
 With best regards,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 BY: ________________
 Emalie A. Boyce
 Assistant Attorney General
 JDC: EAB