GUIDRY, Justice.*
| ,We granted the defendant’s writ application to determine whether, under the Louisiana Constitution, the non-elected commissioners of the Magistrate Section of the Criminal District Court for the Parish of Orleans may conduct trials and accept guilty pleas in misdemeanor cases under the authority of La.Rev.Stat. 18:1347. Because we find La.Rev.Stat. 13:1347 does not grant to the non-elected commissioners the same adjudicatory powers of the elected magistrate judge of the Criminal District Court, we find that court’s practice, as set forth in Louisiana Rules of Court, District Court Rules, Appx. 11 (now Appx. 14.0A, effective June 1, 2010), of allotting misdemeanor criminal cases to the commissioners of the Magistrate Section of the court for accepting guilty pleas and conducting trials, violates La. Const, art. V §§ 1 and 22 (1974). See State v. O’Reilly, 00-2864 (La.5/15/01), 785 So.2d 768. Accordingly, for the reasons set forth below, we today clarify the scope of La.Rev.Stat. 13:1347 in conformity with our state constitution and hold that the commissioners of the Magistrate Section of the Criminal District Court for the Parish of Orleans may not conduct trials or accept guilty pleas in misdemeanor cases, i.e., because they are not elected judges, the commissioners may not lawfully exercise the ^adjudicatory power of the state.
FACTS AND PROCEDURAL POSTURE
The defendant is charged by bill of information with a misdemeanor offense: simple criminal damage to property having a value less than $500. His case was allotted to an appointed commissioner in the Magistrate Section of Criminal District Court for the Parish of Orleans, under Louisiana Rules of Court, District Court Rules, Appx. 11 (now Appx. 14.0A, effective June 1, 2010).[1] After entering a plea of not guilty, the defendant filed a pleading entitled: “Notice of Objection to the Exercise of Any Adjudicatory or Judicial Power in this Case by an Unelected Officer; Motion to Declare La. R.S. 13:1347 Unconstitutional Insofar as It Allows Unelected Officials to Exercise the Judicial or Adjudicatory Powers; and Motion for Transfer to a Court of Competent Jurisdiction.” This pleading was served on both the District Attorney and the Attorney General. The commissioner to whom the case was allotted denied the motion. The court of appeal denied the defendant’s writ application “on the showing made.” State v. Smalls, 09-1653 (La.App. 4 Cir. 12/9/09). At the defendant’s request, this court on December 16, 2009, stayed all further proceedings, including trial of his misdemean- or charge in the Magistrate Section by a commissioner. This court thereafter granted the defendant’s writ application. State v. Smalls, 09-2695 (La.4/16/10), 31 So.3d 1056.
*214 DISCUSSION
The precise issue before the court is whether the non-eleeted commissioners |sof the Magistrate Section of Orleans Parish Criminal District Court may conduct trials and accept guilty pleas in misdemeanor cases under the purported authority of La.Rev.Stat. 13:1347.[2] The defendant asserts the commissioners, because they are not elected judges, may not exercise adjudicatory powers of the state in violation of La. Const, art. V, §§ 1 and 22.[3] He contends this court answered that question in State v. O’Reilly, supra. The State of Louisiana agrees with the defendant, and further asks this court, should it determine that La.Rev.Stat. 13:1347 is unconstitutional as applied, to order the Clerk of the Criminal District Court to re-allot all misdemeanor cases pending before the commissioners to either the magistrate judge or the other sections of the district court. The judges and commissioners of the Criminal District Court argue that the authority of the commissioners, by virtue of La.Rev.Stat. 13:1347, to exercise the adjudicatory power of the state commensurate with the adjudicative authority granted to the duly elected magistrate judge in La.Rev.Stat. 13:1346 was “preserved” when the 1974 Constitution was ratified.
For the reasons more fully discussed below, our review of the applicable constitutional provisions and the history of the pertinent statutes mandates the conclusion *215 that the commissioners of the Magistrate Section of Orleans Parish Criminal District Court may not conduct trials or accept guilty pleas in misdemeanor cases. The principal fallacy in the argument of the judges and commissioners is that the magistrate judge and the commissioners in Orleans Parish Criminal District Court had been granted adjudicatory powers pri- or to the effective date of the 1974 Constitution. In fact, the magistrate judge was not granted the authority to adjudicate misdemeanor cases until 1975, by La. Acts 1975, No. 178, effective July 12, 1975, well after the effective date of the 1974 Constitution on December 31, 1974. Thus, when the commissioner offices were retained in the 1974 Constitution, they possessed no adjudicatory powers, and have not since been granted any such powers; nor can they be granted such powers under La. Const, art. V, §§ 1 and 22.
Our analysis begins with the principles recognized in O’Reilly, which addressed not Orleans Parish but the legislature’s creation in 1998 of the office of | ¡¡commissioner for the 22nd Judicial District Court. As enacted, La.Rev.Stat. 13:719(E)(2)(e) gave the commissioner jurisdiction over criminal matters concurrent with the judges in the 22nd Judicial District and specifically empowered the commissioner to conduct trials, to accept guilty pleas, and to impose sentences in misdemeanor cases, among other duties such as fixing bail and issuing search and arrest warrants. The statute further provided the judges in the 22nd Judicial District would select the commissioner, i.e., the commissioner was not an elected judge.
Following their convictions for misdemeanor offenses, the defendants in O’Reilly moved to set aside the verdicts and sentences on the ground that, because he was not an elected judge, the commissioner had no constitutional authority to adjudicate their trials, or accept their guilty pleas, render verdicts, and impose sentences. This court agreed and found that “[t]he commissioner, an unelected official, cannot lawfully exercise the adjudicatory power of the state.” O’Reilly, 00-2864 p. 8, 785 So.2d at 774. We based our conclusion on La. Const, art. V, §§ 1 and 22(A), see note 2, swpra. We reasoned as follows:
Accepting guilty pleas, rendering verdicts after presiding over a trial, and imposing sentences are unquestionably final determinations which involve the exercise of adjudicatory power. In the instant case, the commissioner, pursuant to the authority granted by La. R.S. 13:719(E)(2)(e), exercised adjudicatory power by accepting O’Reilly’s guilty plea, finding Brewster guilty after trial, and sentencing defendants. Clearly, this subsection allows the commissioner to exercise a portion of judicial power restricted by La. Const, art. V, §§ 1 and 22 to elected judges of authorized courts. The power to make the ultimate determination in a case must be exercised by duly elected judges. The commissioner, an unelected official, cannot lawfully exercise the adjudicatory power of the state. Subsection (E)(2)(e) of La. R.S. 13:719, which authorizes a non-elected person to exercise adjudicatory power, is therefore unconstitutional.
O’Reilly, 00-2864 pp. 7-8, 785 So.2d at 774.
With those principles in mind, we next turn to the particular arguments of the judges and commissioners of the Criminal District Court. While pointing out the | Jong-term existence and established efficiencies of the commissioner system in Orleans Parish, the judges and commissioners assert the legislature created the position of magistrate judge, a Magistrate Section located within the Criminal District Court, as well as the offices of the commissioners, before the 1974 Constitu *216 tion went into effect. Thus, they contend, unlike the situation in the 22nd Judicial District addressed in O’Reilly, the magistrate judge and the commissioners in Orleans Parish were “preserved” as a matter of La. Const, art. V, § 15(A), which provides that “[t]he district, family, juvenile, parish, city, and magistrate courts existing on the effective date of this constitution are retained.” Given the retention clause in Art. V, § 15, the judges and commissioners argue that the persons appointed to the office of commissioner have the same powers, duties, and functions as the elected judge for the Magistrate Section of Criminal District Court for the Parish of Orleans that existed prior to December 31, 1974 (the effective date of the current constitution). Alternatively, the judges and commissioners cite the retention clause in the 1974 Constitution specifically addressing Orleans Parish, La. Const, art. V, § 32, which provides as follows:
Except for provisions relating to terms of office as provided elsewhere in this Article, and notwithstanding any other contrary provision of this constitution, the following courts and officers in Orleans Parish are continued, subject to change by law; the civil and criminal district courts; the city, municipal, traffic, and juvenile courts; the clerks of the civil and criminal district courts; the civil and criminal sheriffs; the constables and the clerks of the first and second city courts; the register of conveyances; and the recorder of mortgages.
We find these arguments to be unavailing, because they fail to recognize the 1974 Constitution could not have retained adjudicatory powers which neither the magistrate judge nor the commissioners possessed prior to its effective date. The legislature created the position of an elected magistrate judge for Orleans Parish in La. Acts 1972, No. 236, which enacted La.Rev.Stat. 13:1346 and provided for “one 17additional judgeship of the Criminal District Court for the Parish of Orleans.... ” La.Rev.Stat. 13:1346(A). The statute as originally enacted provided that the “additional judge created herein shall have all of the powers, duties, rights and prerogatives and qualifications as are now prescribed by the constitution and laws of this state relative to judges of the Criminal District Court for the Parish of Orleans, except as provided herein.” La.Rev.Stat. 13:1346(B)(emphasis added). Act No. 236 also created the Magistrate Section of the Criminal District Court to which the additional judge would be assigned, and specified that the judge “shall have jurisdiction to act as committing magistrate in felony and misdemeanor charges and to hold preliminary examinations, with the authority to bail or discharge or to hold for trial, in all cases before the Criminal District Court for the Parish of Orleans, and shall have the power to adopt all necessary rules with respect thereto.” La.Rev.Stat. 13:1346(C). The legislature further provided the magistrate judge with the authority, subject to approval by the other judges in the Criminal District Court meeting en banc, to “hear preliminary motions, pleas and other matters preliminary to the trial on the merits.... ” La.Rev. Stat. 13:1346(D). As we implicitly recognized in O’Reilly, a guilty plea is not a plea “preliminary to the trial on the merits,” but a final adjudicatory act taking the place of trial. Therefore, conspicuously missing from the enabling legislation for the Magistrate Section was any grant of adjudicatory authority to the magistrate judge, although he was otherwise a duly elected official as any other judge in the Criminal District Court.
Two years later, the legislature created the offices of commissioner for the Magistrate Section, providing the commissioners with “the same qualifications, powers, *217 duties and functions, all as is now or hereafter provided for the judgeship in the magistrate section of said criminal district court.” La. Acts 1974, No. 54818(enacting La.Rev.Stat. 18:1347). Because the commissioners had no greater (and no less) authority than the magistrate judge at that time, the commissioner office at its inception was also non-adjudicatory.
Thus, when the 1974 Constitution went into effect on December 31, 1974, it retained a non-adjudicatory magistrate judge and non-adjudicatory offices of commissioner, all presiding in a non-adjudicatory Magistrate Section within the Criminal District Court. This fact was made clear by the court’s holding in State v. Brady, 310 So.2d 593 (La.1975), which addressed an en banc rule adopted by the judges of the Criminal District Court on December 9, 1974, authorizing the magistrate judge to try misdemeanor cases allotted for that purpose to the Magistrate Section of court. The defendant, facing a charge of a misdemeanor offense, challenged the authority of the magistrate judge to conduct the trial after arraigning her. This court agreed with the defendant that La.Rev.Stat. 13:1346(D) then imposed specific limits on the magistrate judge’s exercise of judicial powers, which excluded trying misdemean- or cases. We reasoned:
[T]he Legislature has limited the jurisdiction and authority of the judge known as the Magistrate to acting as committing. Magistrate, holding preliminary examinations, and hearing motions, pleas, and other matters preliminary to trial on the merits.... The Magistrate has no jurisdiction or authority to conduct the trial of a misdemeanor case on the merits.
Brady, 310 So.2d at 596. We concluded the Criminal District Court’s rule attempting to broaden the magistrate judge’s powers was “ineffective,” and accordingly ordered the defendant’s case re-allotted to another section in the Criminal District Court. Id.
Thus, we recognized in Brady that the magistrate judge in Criminal District Court, from the inception of that additional judgeship in 1972, possessed no adjudicatory power. However, some months after our decision in Brady, and after the effective date of the 1974 Constitution, the legislature enlarged the jurisdiction and |aauthority of the magistrate judge, providing that, with the approval of the other judges in the Criminal District Court meeting en banc, the judge would have the authority to “hear preliminary motions, accept pleas in misdemeanor cases, hear and render judgment in other matters, including misdemeanor cases, preliminary to the trial on the merits, and conduct trials of misdemeanor cases and sign and issue search and arrest warrants upon probable cause being show in accordance with law.” La. Acts 1975, No. 178 (amending La.Rev. Stat. 13:1346(D)). At the same time, by La. Acts 1975, No. 594, the legislature amended La.Rev.Stat. 13:1347(Á) to ratify and confirm the creation of three commissioner positions in the Magistrate Court, specifying that the commissioners “shall not be judges, but shall have the same qualifications, powers, duties, jurisdiction and functions, all as is now or hereafter provided for the judge in the magistrate section of said criminal district court.”
Nonetheless, because the magistrate judge did not possess the adjudicatory power of the state when the 1974 Constitution became effective, neither did the commissioners. Consequently, and contrary to the argument of the judges and the commissioners, the retention clauses of La. Const, art. V, §§ 15(A) and 32 have no bearing on the question of whether the commissioners in the Criminal District Court may now exercise adjudicatory powers otherwise reserved for duly elected judges that the legislature purportedly *218 conferred upon them in 1975. The answer to that question, as we previously found in O’Reilly, is that the commissioners, as non-elected officials, cannot lawfully exercise the adjudicatory power of the state. Thus, to the extent that the Criminal District Court for the Parish of Orleans has interpreted La.Rev.Stat. 13:1347 to permit the commissioners to accept guilty pleas and conduct trials in misdemeanor cases, we find the practice in Criminal District Court to violate |10La. Const, art. V, §§ 1 and 22.[4]
However, unlike the case in O’Reilly, the issue presented here does not require severing one part of La.Rev.Stat. 13:1347 from the remainder of the statute, as opposed to interpreting and narrowing its language. The purported authority of the commissioners to adjudicate misdemeanor cases arises not from any specific provision therein, but from the broad statement that the commissioners “shall have the same qualifications, powers, duties and functions,” as the magistrate judge, whose expansion of powers in 1975 included the adjudication of misdemeanor cases. Indeed, the constitutional impropriety we determine exists in the commissioner system of the Criminal District Court for the Parish of Orleans arises from the local rules of the Criminal District Court, which provide for allotment and transfers of misdemean- or cases to the non-elected commissioners for the disposition of misdemeanor cases, i.e., accepting guilty pleas and conducting trials. In that light, we today clarify the scope of La.Rev.Stat. 13:1347 in accordance with our state constitution and hold that the commissioners of the Magistrate Section of the InCriminal District Court for the Parish of Orleans may not conduct trials or accept guilty pleas in misdemean- or cases, i.e., because they are not elected judges, the commissioners may not exercise the adjudicatory power of the state.[5]
DECREE
Because they are not elected judges, the commissioners of the Magistrate Section of *219 the Criminal District Court for the Parish of Orleans may not exercise the adjudicatory power of the state to dispose of misdemeanor cases by accepting guilty pleas or conducting trials. Accordingly, the commissioner below erred in denying the defendant’s motion to transfer his case, or cause it to be re-allotted, to either the magistrate judge or one of the other sections of the Criminal District Court. That ruling is reversed, and the case is transferred to the Criminal District Court, which is ordered to re-allot the defendant’s case to the magistrate judge or another section of the Criminal District Court.
REVERSED AND TRANSFERRED TO THE CRIMINAL DISTRICT COURT TO BE RE-ALLOTTED.
JOHNSON, J., concurs.

 Retired Judge Philip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.

. The local rule for Criminal District Court, Orleans Parish, set forth in Appendix 11 to the District Court Rules, now found at Appendix 14.0A to those Rules, effective June 1, 2010, provides for five classes of cases, and describes the "fourth class" as "[t]hose triable by the Court without a jury....” Allotments, Rule 2(d). Rule 8 under the heading "Allotments” provides that "[fjourth class cases shall be randomly allotted among Sections A though L and the Magistrate Section,” which would presumably include the commissioners of the Magistrate Section. Furthermore, the rules under the heading "Transfers,” provides that "[a]ny Judge may transfer to a Commissioner any non-jury misdemeanor case for disposition without the approval of that Commissioner.” Transfers, Rule 2.

. La.Rev.Stat. 13:1347, entitled “Commissioners of magistrate section,” provides in pertinent part:
A. (1) In addition to the judgeships, including the judge of the magistrate section of the Criminal District Court for the parish of Orleans, the four offices of commissioner of said court created under R.S. 13:1347, Act No. 548 of the 1974 Regular Session as amended by the Louisiana Legislature are hereby approved, confirmed, ratified, affirmed, and validated in the magistrate section of said court. The persons appointed to the offices of commissioner created by this Section shall be known as commissioners and shall not be judges, but shall have the same qualifications, powers, duties, jurisdiction, and functions, all as is now or hereafter provided for the judge in the magistrate section of said criminal district court.
[[Image here]]
(3) The judges of the criminal district court, sitting en banc, shall determine the further powers, duties, functions, and policy affecting the offices of commissioner, not inconsistent with the provisions of this Section.
B. The initial appointments by the governor of the three commissioners created in R.S. 13:1347, Act No. 548 of the 1974 Regular Session of the Louisiana Legislature, are hereby approved, confirmed, ratified, continued, validated, and affirmed and said appointment shall be for a term of six years from the date thereof.
C. Should there be a vacancy created by the removal, resignation or death of any commissioner, the judges of the criminal district court sitting en banc shall fill the vacancy by appointment for the unexpired term. At the termination of the initial term and or any subsequent terms of a commissioner, the judges of the criminal district court sitting en banc shall appoint successors to the office for like terms....
D. There is hereby created an additional commissioner of the Criminal District Court of the parish of Orleans. The commissioner shall have the same qualifications, powers, duties, jurisdiction, and functions all as is now or hereafter provided for the other commissioners in the magistrate section of said criminal district court.
[[Image here]]
(2) The judges of the Criminal District Court of the parish of Orleans sitting en banc, shall make the initial appointment of the additional commissioner of the Criminal District Court of the parish of Orleans for a term of six years....

. Art. V, § 1 provides: "The judicial power is vested in a supreme court, courts of appeal, district courts, and other courts authorized by this Article.”
Art. V, § 22(A) provides in part: "Except as otherwise provided in this Section, all judges shall be elected.”

. Although the judges and commissioners suggest that “countless attacks questioning convictions and guilty pleas presented to the Commissioners in Orleans Parish will be the inevitable result” of a finding that the commissioners cannot exercise the adjudicatory power of the state, neither the defendant nor the State makes such an argument. Indeed, even the judges and commissioners acknowledge that in O’Reilly this court "embraced” the de facto officer doctrine to uphold the constitutional validity of the defendants’ convictions. "The de facto officer doctrine confers validity upon the acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person’s appointment or election to office is deficient.” O'Reilly, 00-2864 p. 12, 785 So.2d at 777 (quoting Ryder v. United States, 515 U.S. 177, 180, 115 S.Ct. 2031, 2034, 132 L.Ed.2d 136 (1995)).
As previously explained, we determined in O’Reilly that La.Rev.Stat. 13:719(E)(2)(e), creating the commissioner office in the 22nd Judicial District Court, was unconstitutional under La. Const, art V, §§ 1 and 22; however, we reversed the trial court’s rulings vacating and setting aside the defendants' convictions based on the unconstitutionality of the statute. In applying the de facto officer doctrine, we reasoned the commissioner "was not a usurper of an office who was acting without color of right.” O’Reilly, 00-2864 p. 13, 785 So.2d at 778. "Rather, he was at minimum a de facto officer sitting pursuant to an apparently valid statute whose unconstitutionality had not been attacked directly or declared at the time defendant O'Reilly pleaded guilty and was sentenced and at the time [defendant] Brewster was tried, found guilty, and sentenced.” Id., pp. 13-14, 785 So,2d at 778. Although the issue is not directly presented under the facts of this case, the judges and commissioners have not demonstrated any valid reason why that same rationale would not apply to the commissioners in Orleans Parish.

. The judges and the commissioners broadly argue that, if the non-elected commissioners in Orleans Parish may not exercise the adjudicatory power of the state, then the appointment by this court of non-elected persons or retired judges as judges pro tem or ad hoc is *219 equally violative of the constitution. The issue of the scope of adjudicatory power in any situation in which a non-elected individual is appointed as a judge pro tem or ad hoc is not presently before us. Instead, the only question we decide today is the constitutional propriety of a non-elected commissioner in the Magistrate Section of Orleans Parish Criminal District Court exercising the adjudicatory power of the state in misdemeanor cases. Nevertheless, we note that La. Const, art. V, § 5(A), as amended in 1987, provides as follows:
The supreme court has general supervisory jurisdiction over all other courts. It may establish procedural and administrative rules not in conflict with law and may assign a sitting or retired judge to any court. The supreme court shall have sole authority to provide by rule for appointments of attorneys as temporary or ad hoc judges of city, municipal, traffic, parish, juvenile, or family courts.