Dear Mr. Gruntz:
You have informed this office that Jefferson Parish is in the process of creating an Office of Inspector General (OIG) by Charter amendment and have provided us with a copy of Resolution No. 114969, adopted by the Jefferson Parish Council. According to Resolution No. 114969, Jefferson Parish has created an "Advisory Committee for the Establishment of an Office of Inspector General" that is charged with preparing a report to the Jefferson Parish Council on the advisability and feasibility of establishing an OIG. This Resolution also asks this office to issue an opinion, "indicating whether and under what circumstances" an OIG established by Jefferson Parish "would have authority to investigate the Jefferson Parish Sheriff, Clerk of Court, Assessor, Coroner, School Board, incorporated municipalities, the 24th Judicial District Court and/or the District Attorney."
You further note that, through state mandates and/or intergovernmental agreements, Jefferson Parish provides some funding to most of the entities listed in Resolution No. 114969. However, you also indicate the Parish government has no authority under the current Parish Charter to administer or supervise these entities and you provide applicable citations to the Parish Charter. Moreover, you have inquired about the authority of an OIG to investigate these entities under La.R.S. 33:9611,et seq., in view of the exemptions found in the Jefferson Parish Charter and any limitations found in the Louisiana Constitution. We offer the following in response.
Louisiana law recognizes the authority of a parish governing authority of a parish whose population according to the latest census is in excess of 400,000 persons to create within parish government an OIG if such action is also authorized by the parish charter. See La.R.S. 33.9611(A)(1)(b); and see La.R.S. 33:9612. The Inspector General Law allows a properly constituted OIG to be accorded "all investigative powers and privileges *Page 2 
appurtenant to a law enforcement agency under state law ." La.R.S. 33:9612. These powers include the authority to "make investigations and examinations, within or outside of the state of Louisiana as each deems necessary, in order to carry out the duties of its mandate under law, and may gather evidence in any matter in any legally appropriate manner." La.R.S. 33:9613(A)(1). An OIG may also issue subpoenas, administer oaths, take testimony, and seek judicial assistance in the conduct of its investigations. See La.R.S. 33:9613(A)(2)-(3); and see La.R.S. 33:9613(C). These grants of power and authority extend to permit an OIG "to examine, review, audit, inspect, and investigate the records, books, reports, documents, papers, correspondence, accounts, audits, inspections, reviews, recommendations, plans, films, tapes, pictures, computer hard drives, software data, hardware data, e-mails, instant messages, text messages, and any other data and material relevant to any matter under audit, investigation, inspection, or performance review of all entities of the local governmental subdivision or entities receiving funds through or for the benefit of the local governmental subdivision." La.R.S.33:9613(D)(1).
The information you provided to this office as confirmed on the official U.S. Census Bureau web site indicates that the population of Jefferson Parish was over 400,000 persons according to the 2000 and 2010 Census. Therefore, Jefferson Parish is authorized to amend its Charter to create an office of inspector general for the parish under the terms of R.S. 33:9611(A)(1)(b). But that does not end the inquiry. Reference must be made to the Charter itself and to the State Constitution to determine whether and to what extent the referenced entities might be subject to the OIG's investigatory powers.
The Charter recognizes that its provisions do not reach the independent entities of Sheriff, District Attorney, 24th JDC, Clerk of Court, Coroner, Assessor, or School Board. In pertinent parts, of the Jefferson Parish Charter provides as follows:
At Section 2.01(A)(5):
[The Parish Council may by] ordinance, abolish or consolidate any parish department, office, or agency, or provide for the consolidation and transfer of any of the functions of such departments, offices, or agencies . . . provided that:
(a) The police powers of the Sheriff, including the power, authority, and duty to preserve the public peace and order, to apprehend disturbers thereof, to prevent crime and to apprehend criminals, to protect the rights of persons and property, and to enforce the laws shall not be transferred or diminished and provided further that the Sheriff's functions as ex officio tax collector as provided in . . . the State Constitution . . . shall not be diminished. *Page 3 
b) The power, authority, and duties of the Clerk of the District Court, Tax Assessor and the School Board shall continue as in . . . the State Constitution . . ., but subject to the general laws of the State with respect to the Clerks of the District Courts, Tax Assessors, tax assessments, parish School Boards, and public education.
At Section 3.03(A):
The Parish President shall be the chief administrative officer of the parish and, as such, responsible to the Parish Council for carrying out policies adopted by the Council and for the administration and supervision of all parish departments, offices, agencies, and special districts. The parish President shall not be responsible for, nor have authority to administer or supervise, the offices of Sheriff, Clerk of the District Court, Tax Assessor, or Coroner, Except insofar as Section 4.02 [regarding Financial Administration] and Section 4.03 [regarding Personnel Administration] of this Charter may be applied validly to those offices.
At Section 6.03:
[T]he parish School Board and public school system shall be exempt from the provisions of this Charter and nothing in this Charter shall be considered as applying to the officers and offices of the 24th Judicial District. No incorporated municipality of the parish shall be governed by this Charter except insofar as otherwise provided herein.
You question whether and to what extent the Charter could or would have to be amended to allow for the creation of an OIG with investigative powers that would include the power to investigate the independent identified entities. We note that the exclusions and exemptions of these entities from the scope of the Charter actually originate and find their footing in the Constitution and laws of the State of Louisiana. Therefore, even if the Charter is amended to establish an OIG and an investigative framework within the OIG, such an amendment must comply not only with applicable Charter provisions, but also must not intrude upon the constitutional power of the entities, the oversight of which the parish seeks to grant to the OIG.
The Louisiana Constitution states that "no home rule charter or plan of government shall contain any provision affecting a school board or the offices of district attorney, sheriff, assessor, clerk of a district court, or coroner which is inconsistent with the constitution or law." La.Const. Art. VI, Sec. 5(G) (emphasis added). Citing this provision, among other things, the Louisiana Supreme Court has held that an independent office, such as a district attorney, assessor, clerk of court, school board or sheriff, "exercises a portion of the sovereign power of the state within the district of his office. . . . His office, duties, and powers are governed by the constitution and the *Page 4 
legislature, and are not subject to local control. . . . His office, therefore, is an office of the state, not local government. . . ."[1]
Thus, as offices established by the Constitution and legislation, the operations and independent discretion of the School Board, Sheriff, Clerk of Court, Coroner, Assessor, and District Attorney are beyond the general control of the Charter, which is the blueprint for parish governance. As a consequence, the powers granted to a parish OIG under La.R.S. 33:9613, as well as any charter provisions adopted pursuant thereto, may not infringe upon the constitutionally-protected independence of these entities.
In addition, the Louisiana Constitution places the Sheriff, Clerk of Court, Coroner, and District Attorney within the judicial branch of government.[2] We observe that the Supreme Court of Louisiana has concluded that Jefferson Parish, as a "local governmental subdivision operating under a home rule charter[,] has the power in affairs of local concern as broad as the power of the state, except when the power is limited by the constitution, by law permitted by the constitution, or by its own home rule charter."[3] But this power must be understood in the context of the state's tripartite system of government. The Court explains that "La.Const. art. II, §§ 1 and 2 divide governmental power into three separate branches and provide that no one branch shall exercise powers belonging to the others. These sections provide the basis for the recognition of inherent powers in the judicial branch which the legislative and the executive branches cannot abridge. . . ."[4] Under the doctrine of inherent powers, "other branches of government cannot, by denying resources or authority to the court, prevent the courts from carrying out their constitutional responsibilities as an independent branch of government. . . ."[5]
Finally, as you observe, the independent offices, along with the parish School Board, are currently and specifically exempt from the provisions of the Charter. While a charter amendment could remove these internal exemptions, it could not eliminate the constitutional hurdle. In other words, even if the Charter is amended to delete the exemptions for some or all of the entities currently listed as exempt from the Charter provisions or to include some or all of these entities within the scope of the Charter provisions in an attempt to subject these entities to the authority of a parish OIG, then such charter amendments would still be subject to scrutiny as to whether they would be in conflict with the status of these entities as independent Constitutional offices and, whether in light of this status, the Constitution places any limitations on the reach of any such charter amendment(s). *Page 5 
The grant of authority and power to an OIG relating to entities other than "entities of the local governmental subdivision" is circumscribed by the requirement that such entities receive "funds through or for the benefit of the local governmental subdivision." The grant of authority and power of an OIG as to entities of the local subdivision is not so restricted. It seems reasonable and clear based upon the constitutional limitations set forth above that the authority of an OIG, as it relates to entities other than entities of the local governmental subdivision, is restricted to funds received "through or for the benefit of their local governmental subdivision."
As independent Constitutional offices or entities, and not entities created by the parish Charter, none of the entities identified in Resolution No. 114969 could be considered an entity "of" the "local governmental subdivision," which is Jefferson Parish Government. You indicate, however, that Jefferson Parish provides some funding to most of the listed entities through state mandates and intergovernmental agreements. To the extent that a listed independent entity receives funds through or for the benefit of Jefferson Parish, this office is of the opinion that the independent entity would be subject to the investigative authority granted to the OIG pursuant to La.R.S. 33:9613(D)(1), but then only to the extent necessary to verify the accuracy of a billing to the Parish arising from state mandates or intergovernmental agreements or to determine whether dedicated funds received from or on behalf of the Parish were spent for only the authorized or dedicated purposes.
Another area where inquiry by an OIG would be appropriate is where an agency is using property or equipment of the Parish or the Parish has a residual interest in a fund under the control of another independent entity. In Perez v. Plaquemines Parish Commission Council, [6] the court ruled that a parish commission council had no right to interfere with the discretionary acts of a district attorney in his official capacity or to usurp his prosecutorial functions. However, the court found that the council could investigate the actions of the district attorney with respect to use of property and equipment belonging to the parish, including activities of the district attorney and one of his employees, in their individual capacities, relating to parish funds, property, and equipment. The court also found that the council could inquire as to how the funds deposited into a criminal court fund were depleted by the district attorney because the council had an interest in receiving the unused balance of the fund remaining at year's end.[7]
It is therefore the opinion of this office that to the extent the OIG is granted investigative authority over the independent offices listed in Resolution No. 114969, this authority would be limited by the separation of powers doctrine, the Constitutionally protected independence of these entities, and the statutory language of La.R.S. 33:9613(D)(1) to allow for the OIG to exercise these powers only to the extent necessary to ensure that *Page 6 
funds and assets provided by the parish to these entities that are restricted or dedicated for particular purposes through legislation or cooperative agreement were used only in accordance with the restriction or dedication or that there is an accurate accounting of the funds collected and distributed by an independent office that the parish may have some claim to, as with the criminal court fund referenced in thePerez decision.
We observe that the required procedure to amend the Charter is found in the parish Charter at Section 6.07.[8] Also, La.R.S. 33:1181.1[9]
requires that an amendment be filed with the Secretary of State. Following these procedural requirements, the Charter could be amended to create the OIG and grant the office the full panoply of investigative powers allowed by law as discussed above, notwithstanding any provision of the Charter to the contrary. We are of the opinion that this type of amendment would accomplish your stated goal without the appearance of submitting the independent entities to other provisions of the Charter, a maneuver that would be subject to challenge on the constitutional grounds discussed above.
We hope this sufficiently answers your inquiry; however, if we may be of further assistance please do not hesitate to contact our office.
Very truly yours,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
BY:__________________________ BRADLEY OVERTON Assistant Attorney General
JDC:BO:tp
[1] Diaz v. Allstate Insurance Co., 433 So.2d 699, 701 (La. 1983) (internal citations omitted).
[2] La.Const. Art. V. Judicial Branch (§ 26 District Attorneys, § 27 Sheriffs, § 28 Clerks of Court, § 29 Coroners).
[3] Konrad v. Jefferson Parish Council, 520 So.2d 393, 396 (La. 1988), citing, Francis v. Morial, 455 So.2d 1168 (La. 1984).
[4] Konrad, 520 So.2d at 397 (internal citations and footnotes omitted).
[5] Id.
[6] Perez v. Plaquemines Parish Commission Council, 391 So. 2d 1308
(La. App. 4 Cir. 1980) writ refused, 397 So.2d 805 (La. 1981). We note that Plaquemines Parish and Jefferson Parish are both governed under home rule charters that were already in existence at the time of the passage of the Constitution of 1974, so that Art. VI, § 4, of the Constitution is relevant to both Parishes in the context of this opinion.
[7] Perez, 391 So.2d at 1312.
[8] Section 6.07 states that:
Amendments to this Charter may be proposed by an ordinance adopted by the Parish Council or by petition of fifteen per cent of the registered voters in the parish provided however that no amendment shall be made for six months after this Charter becomes effective. The Council shall call an election not less than 60 nor more than 120 days after it adopts the ordinance or receives a petition certified in the manner required for an initiatory petition for an ordinance. The adoption of an amendment shall require a majority of the electors voting on the amendment.
[9] La.R.S. 33:1181.1 states that:
Prior to January 1, 1991, and at least thirty days after effecting any amendments to its respective charter, the governing authority of each parish or municipality with a home rule charter or a legislative charter shall file with the secretary of state a copy of its respective charter or the amendments thereto.